2011 VT 28

## In re Jean Brett

[19 A.3d 154]

No. 10-201

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 25, 2011

*William R. Dysart,* Vermont Legal Aid, Inc., Burlington, for Petitioner-Appellant.

*William H. Sorrell,* Attorney General, Montpelier, and *Heidi J. Murphy* and *William H. Ahlers,* Assistant Attorneys General, Waterbury, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** Petitioner Jean Brett appeals a decision of the Secretary of the Agency of Human Services disallowing a deduction for personal care services from her patient share under federal and state Medicaid laws. We affirm.[1]

¶ 2. Brett has been eligible for home-based, long-term care through Vermont's Medicaid-funded Choices for Care Program (Choices) since June 2007. Choices is a state-administered Medicaid waiver program authorized under 42 U.S.C. § 1396n(c)(1), which provides for in-home, long-term-care services. The Department of Disability, Aging and Independent Living (DAIL) and the Department for Children and Families (DCF) jointly administer Choices. DAIL determines clinical eligibility and DCF determines financial eligibility. Depending upon their income level, individuals eligible for Medicaid programs, including Choices, may be obliged to pay a share of the costs of their care — this is known as the patient share.

¶ 3. The patient share is calculated by determining an individual's gross monthly income and subtracting specifically defined deductions. See Spend-Down, Patient Share, and Resource Transfer, ch. 440, § 4442, 5 Code of Vt. Rules 13 170 440-3 (effective Oct. 1, 2008), available at http://www.michie.com/vermont [hereinafter Spend Down Rules]. Although DCF determines the amount of the patient share, DAIL staff determines if the personal care

---

[1] Our holding does not rely on the materials contained in DCF's motion to supplement the record filed December 30, 2010, and it is therefore dismissed as moot.

hours requested by a patient are "covered" by Choices. If the requested services are not covered by the program, DAIL staff determines whether the services are medically necessary. See Spend Down Rule 4452. If services are medically necessary and not covered by any provisions of Choices, then they can be deducted from the patient's income for purposes of calculating the patient share. See 42 C.F.R. § 435.735(c)(4)(ii).

¶ 4. Brett has never requested more than five days per week of personal care services. At the time of her Human Services Board hearing, she received 23.75 hours of in-home personal care services each week under Choices — 18.25 hours for daily living activities and 5.5 hours for instrumental activities of daily living. She also received 720 hours per year for respite care, 48 hours per year for case management, as well as payment for her emergency response system. From 2007 through 2009, DCF determined Brett's patient share for these services to be $0, meaning she was not required to contribute any of her income towards the cost of the Choices services. Her gross income during these years was approximately $2500 a month, but she was allowed deductions for home upkeep and family maintenance (around $950), health insurance expenses (around $185), and noncovered medical expenses (around $1450). Brett's noncovered medical expenses consisted primarily of personal care services that her daughter provided beyond the five days of visiting nurse care provided through Choices. From April 2009 through June 2009, DCF determined Brett's patient share to be $45 per month. Her gross monthly income at this time was approximately $2670, and she was again allowed deductions for home upkeep and family maintenance ($991), health insurance ($18), and noncovered medical expenses ($1451). Again, the majority of these "noncovered" medical expenses were for personal care. services provided by Brett's daughter.

¶ 5. In July 2009, DCF determined Brett's patient share to be $1155 per month. This increase was due to DAIL's determination "that [seven days of] general supervision [were] not medically necessary" and as such, the cost of Brett's personal care services in excess of the five days currently covered by Choices could no longer be included in her deduction for noncovered medical services. This determination reduced Brett's deduction for noncovered medical expenses from $1451 to $353. Brett appealed the DCF determination to the Human Services Board in August

2009, and a hearing was held in January 2010. The hearing officer issued proposed findings of fact and a recommended order, which the Human Services Board unanimously approved and adopted on April 9, 2010. The Board found that the evidence supported the medical necessity of covered personal care services seven days per week. Because Choices was providing Brett with personal care services only for the five days she had requested, the Board ordered DCF to deduct the cost of the additional two days of personal care services provided by her daughter. The effect was to reduce Brett's patient share once more to nearly zero.

¶ 6. On April 26, 2010, the Secretary of the Agency of Human Services reversed the Board's order. The Secretary concluded that the Board had exceeded its authority by granting relief beyond Brett's appeal — that is, by modifying her plan of care to provide personal care services seven days a week when she had requested only five days of coverage. The Secretary also found that the Board had acted in contravention of state and federal law when it ordered a deduction for medical expenses that were or could be covered through Choices. The Secretary made no finding as to the medical necessity of the additional two days of care.

¶ 7. Brett sought to appeal the Secretary's reversal to the Human Services Board on April 28, 2010. DCF filed a motion to dismiss, which the Board granted by order dated June 4, 2010. Brett appealed.

¶ 8. Under the applicable Vermont Medicaid provisions, "noncovered" medical expenses must be deducted from a beneficiary's countable income for the purpose of calculating the patient share. Spend Down Rule 4442(b). The main arguments presented by the parties boil down to one pertinent question: what is the definition of a "noncovered" medical expense under state and federal Medicaid law?

¶ 9. Brett's argument is essentially that "noncovered" means "not currently covered," despite being coverable under the state's Medicaid plan. According to Brett, because the additional two days of personal care services provided by her daughter are medically necessary and not currently covered in her Choices plan, they are deductible despite the fact that they may be covered if she makes a request for the additional services. DCF, on the other hand, contends that "noncovered" means not capable of being covered.

¶ 10. Brett argues that language in the controlling section of the Code of Federal Regulations supports her interpretation. She contends that the controlling provision for determination of patient share deductions is 42 C.F.R. § 435.831, entitled "Income eligibility," which states that:

> in determining incurred medical expenses to be deducted from income, the agency must include the following:
>
> . . . .
>
> (2) Expenses incurred by the individual or family or financially responsible relatives for necessary medical and remedial services that are recognized under State law but not included in the plan;
>
> (3) Expenses incurred by the individual or family or by financially responsible relatives for necessary medical and remedial services that *are included in the plan*, including those that *exceed* agency limitations on amount, duration, or *scope of services*.

42 C.F.R. § 435.831(e)(2), (3) (emphases added). According to Brett, this statute demonstrates that despite the fact that the services for which she requests a deduction "are included in the plan," she may deduct them because they "exceed" the five days she is currently receiving. However, this provision applies, by its terms,[2] only to the calculation of *financial eligibility* for Choices; i.e. whether the individual's income is low enough to even get in the door.

¶ 11. The appropriate section which outlines deductions to be taken *after* financial eligibility has been established is 42 C.F.R. § 435.735. This section, entitled *"Post-eligibility* treatment of income and resources of individuals receiving home and community-based services furnished under a waiver: Application of patient income to the cost of care," directs in relevant part that:

> (c) In reducing its payment for home and community-based services, the agency must deduct the following amounts, in the following order, from the individual's

[2] "The agency must determine income eligibility of medically needy individuals in accordance with this section." 42 C.F.R. § 435.831.

total income (*including amounts disregarded in determining eligibility*):

. . . .

(4) Amounts for incurred expenses for medical or remedial care *that are not subject to payment by a third party,* including—

(i) Medicare and other health insurance premiums, deductibles, or coinsurance charges; and

(ii) Necessary medical or remedial care recognized under State law but *not covered under the State's Medicaid plan,* subject to reasonable limits the agency may establish on amounts of these expenses.

42 C.F.R. § 435.735(c) (emphases added). The language of subsection (c) demonstrates that deductions taken for determination of eligibility and deductions taken post-eligibility for determination of patient share are treated differently. Furthermore, the language of subsection (c)(4) lends no support to Brett's argument that "noncovered" means not currently covered.

██ ¶ 12. In his decision, the Secretary appears to have adopted DCF's definition of "noncovered." He found that "[t]he patient share deduction is allowed for reasonably necessary, *non-covered* care, but cannot include payment for covered services." He explained that DCF was correct in disallowing the deduction for personal care services "because [Brett] *could have* asked for and received the additional personal care hours from the Choices for Care program. The law does not permit a deduction from her patient share for services covered elsewhere." (citing 42 C.F.R. § 435.735(a), (c)(4)(ii) and Spend Down Rule 4462(d)). Thus, the Secretary interpreted "noncovered" to mean "not-coverable" under the statute. We agree.

██ ¶ 13. If the Secretary had adopted Brett's definition, that "noncovered" means "not currently covered," a beneficiary requiring seven days of medically necessary care could request only three days, or one, or any other number, and deduct the remainder from his or her income. The Medicaid beneficiary then would become the architect of benefit administration, rather than the agency in which the Legislature vested such authority. On the other hand, under the definition proposed by DCF, to which the

Secretary adhered, a beneficiary would receive all benefits that Medicaid is capable of providing through Medicaid programs. Any medically necessary care beyond that can then be deducted from the beneficiary's patient share. In matters of state law, this Court generally defers to the Secretary regarding interpretations of the governing statutes and regulation absent a compelling indication of error. See *Jacobus v. Dep't of PATH*, 2004 VT 70, ¶ 23, 177 Vt. 496, 857 A.2d 785 (mem.). But cf. *Hogan v. Dep't of Soc. & Rehab. Servs.*, 168 Vt. 615, 617, 727 A.2d 1242, 1244 (1998) (mem.) ("We defer to an administrative agency's interpretation of its own statutes and rules but not to a state agency's interpretation of federal law where the state agency is charged with administering the federal program at the local level."). We find no compelling error in the Secretary's interpretation.

¶ 14. Brett argues next that the Secretary exceeded the scope of his authority in reversing the Board's order. All decisions and orders of the Board are subject to review by the Secretary. 3 V.S.A. § 3091(h)(1). Additionally, Vermont law gives the Secretary power to reverse Board decisions when the decision implicates the application of agency rules.

> [T]he secretary may reverse or modify a board decision or order if:
>
> > (i) the board's findings of fact lack any support in the record; *or*
>
> > (ii) the decision or order implicates the validity or applicability of any agency policy or rule.

*Id.* § 3091(h)(1)(A) (emphasis added).

¶ 15. The Board's decision here construed the term "noncovered" in Spend Down Rule 4442 to mean not currently covered. This directly implicated the application of deductions for personal care expenses under Vermont's Medicaid laws, and as such the Secretary was well within his authority to review this matter.

¶ 16. Having deferred to the Secretary's interpretation of "noncovered" medical expenses, the question becomes whether Brett's two additional days of care were noncoverable and hence deductible. See Spend Down Rules 4450-4453 (delineating allowable medical expenses under the Vermont Medicaid rules); Spend

Down Rule 4462 (listing allowable deductions to determine patient share and referring to Spend Down Rules 4450-4453 regarding medical expenses). The specific requirements for personal care services are set out in Spend Down Rule 4452.3, which states in pertinent part:

> The department will allow a deduction for noncovered personal care services provided in an individual's own home or in a level IV residential care home when they are medically necessary in relation to an individual's medical condition.
>
> (a) Deductible Personal Care Services
>
> Deductible personal care services include those personal care services described in [rule 7406.2] and assistance with managing money.

Spend Down Rule 4452.3(A).

¶ 17. Under Rule 7406.2:

Covered personal care services include:

- Assistance with bathing, dressing and grooming;

- Assistance with bladder or bowel requirements;

- Assistance with medications which are ordinarily self-administered;

- Assistance with eating, drinking and diet activities, to include the preparation of meals when necessary;

- Assistance in monitoring vital signs;

- Routine skin care;

- Assistance with positioning, lifting, transferring, ambulation and exercise;

- Assistance in the use of adaptive equipment;

- Limited housekeeping services essential to a recipient's comfort and health and incidental to the medical care of the recipient;

- Accompanying the recipient to clinics, physician office visits, or other trips which are medically necessary;

- Continuation of training programs to increase or maintain recipient independence, physical and/or cognitive functioning, cognitive and emotional well-being, and to promote health and safety.

See Other Medicaid Services, ch. 740, § 7406.2, 5 Code of Vt. Rules 13 170 740-4 (effective Oct. 1, 2008), available at http://www.michie.com/vermont. The parties agree that Brett's "multiple health problems and conditions significantly limit her functional capacity. She depends on others for assistance with her personal care." Moreover,

> she needs full caregiver assistance with meal preparation, household maintenance, housekeeping, laundry, shopping, equipment and money management and transportation; extensive assistance with dressing, personal hygiene, transferring, toileting, bathing, meal preparation and bed mobility; and limited assistance with mobility, eating, [and] medication management.

Thus, Brett's needs appear to fall within the covered services outlined above in Rule 7406.2.[3] Further evidence that the additional two days are coverable is the fact that the services Brett requires on the additional two days are germane to the services currently provided by Choices. Because the additional two days of care are coverable under Vermont's Medicaid statutes, their costs cannot be deducted from Brett's patient share. Brett may, of course, request to have seven days of care through Choices. It will

---

[3] Brett argues that even if her services are listed as coverable under this rule, they are nevertheless noncoverable because the amount of services she needs exceeds Choices limits. She cites no statutory authority for the proposition that there are program limits, nor does she delineate how many hours of her medically necessary care would exceed the program limits. Furthermore, until she makes a request for the additional days of care, the Agency has no ability to divine the number of additional hours she will request. The Court notes that the Choices regulations do outline maximum hours for certain services. Choices for Care, 1115 Long-Term Care Medicaid Waiver Regulations, ch. 008, § VIII, 4 Code of Vt. Rules 13 110 008-3 (effective Oct. 7, 2005), available at http://www.michie.com/vermont [hereinafter CFC Regulations]. However, the CFC Regulations also provide for variances when the "variance is necessary to protect or maintain the health, safety or welfare of the individual." CFC Regulations, § XI, at 13 110 008-09. Thus, even amounts above the maximums are coverable until the denial of a variance. We do not address the question of whether, upon denial of a variance, those services would be considered "noncovered" for deduction purposes.

then be up to DAIL staff to determine if the services requested are medically necessary.

*Affirmed.*