2014 VT 20

# In re Jean Brett

# In re Leslie McCool

[93 A.3d 120]

Nos. 12-094 & 12-236

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed February 14, 2014

*William R. Dysart, Vermont Legal Aid, Inc.*, Burlington, for Petitioners-Appellants.

*William H. Sorrell*, Attorney General, *William H. Ahlers*, Assistant Attorney General, Montpelier, and *Kristen L. Clouser*, Assistant Attorney General, Waterbury, for Respondent-Appellee.

¶ 1. **Robinson, J.** Petitioners in these consolidated appeals, both recipients of home-based long-term care benefits through Vermont's Medicaid-funded Choices for Care (Choices) program, appeal decisions of the Human Services Board disallowing deduc-

tions for personal care services from their patient-share obligation under federal and state Medicaid laws. We conclude that, to the extent the services in question are medically necessary, expenses for those services must be deducted from petitioners' patient-share obligation even if they are of a type generally covered by Medicaid. We further reject the State's claim that the decision of the Department of Disabilities, Aging and Independent Living (DAIL) not to provide the personal care services in question under the Choices program constituted a conclusive finding that the services are not medically necessary. Accordingly, we reverse the Board's orders and remand the cases for determinations of medical necessity consistent with this opinion.

## I. General Background Law

¶ 2. Choices is a state-administered program funded through a Medicaid waiver that, in relevant part, provides home-based long-term-care services to eligible elderly or physically disabled Vermont adults. See Choices for Care 1115 Long-Term Care Medicaid Waiver Regulations § I(A), 4 Code of Vt. Rules 13 110 008-1, available at http://www.lexisnexis.com/hottopics/codeofvtrules [CFC Regulations]. The Choices waiver is subject to approval by the Centers for Medicare and Medicaid Services (CMS), the federal agency charged with providing program oversight, and is managed in compliance with CMS terms and conditions of participation. Id.

¶ 3. Applicants for services through the Choices program must satisfy both clinical and financial criteria. Id. § IV(A)(1). On the financial side, applicants are sometimes required to "spend down" their available income before they are eligible to participate in the program. See id. § IV(D) (discussing financial eligibility standards). Based on various clinical criteria, eligible individuals are classified into the highest-needs group, the high-needs group and the moderate-needs group. Id. § IV(B). The services available under the program vary based on the individual's classification. Id. § VIII. DAIL and the Department for Children and Families (DCF) jointly administer Choices, with DAIL determining clinical eligibility and category of clinical needs and DCF determining financial eligibility for those in the high- and highest-needs categories. Id. § VI(B)-(C).

¶ 4. Among the personal care services covered by Choices are assistance with activities of daily living (ADLs) — which are

categorized into discrete units such as dressing, eating, bathing, bed mobility, and toilet use — and assistance with instrumental activities of daily living (IADLs) — which are also categorized into discrete units such as meal preparation, medication management, household maintenance, and transportation. *Id.* § III(1), (28), (37). The number of hours of personal care services available through Choices for assistance with various specified needs are capped. *Id.* § VIII. However, an individual may request services above the cap by seeking a variance. *Id.* § XI.

¶ 5. People eligible for Medicaid programs, including Choices, are required, depending on their income, to pay a share of the costs of their care. Spend-down, Patient Share, and Resource Transfer Regulations § 4400, 5 Code of Vt. Rules 13 170-1, available at http//www.lexisnexis.com/hottopics/codeofvtrules [Patient Share Regulations]. The patient share is calculated by determining a person's gross monthly income and then subtracting federally mandated deductions, including a personal needs allowance, home-upkeep expenses, family maintenance, and reasonable medical expenses. *Id.* § 4460. In the closely related context of spend-downs in connection with an applicant's initial eligibility, a deduction "is allowed for necessary medical and remedial expenses recognized by state law but not covered by Medicaid," *id.* § 4452, including "noncovered personal care services provided in an individual's own home . . . when they are medically necessary in relation to an individual's medical condition," *id.* § 4452.3, and "[c]overed medical expenses . . . that exceed limitations on amount, duration, or scope of services covered," *id.* § 4442(c). Deductions for "general supervision" of a beneficiary's well-being may be allowed where that care is required due to a specific diagnosis of certain debilitating diseases like Alzheimer's disease or dementia. *Id.* § 4452.3(a).

¶ 6. A beneficiary claiming a deduction for the cost of personal services as a necessary medical expense submits to DAIL a Statement of Cost for Personal Care Services (form 288C) and a Statement of Need for Personal Care Services (form 288B) from a treating physician. DAIL reviews the forms and determines whether to provide the requested services under the Choices program. DCF determines the amount of the patient share. Services that are medically necessary and not covered by Choices are deducted from the beneficiary's income for purposes of calculating the patient share. See 42 C.F.R. § 435.735(c)(4)(ii)

(federal regulation governing application of patient income to the cost of care); see also Patient Share Regulations § 4442 (listing deduction sequence for spend-down purposes).

## II. Facts and Procedural History

### A. Jean Brett

¶ 7. This is Jean Brett's second appeal to this Court concerning the denial of her requests for a deduction for the cost of personal care services from her patient share obligation under the Choices program. See *In re Brett*, 2011 VT 28, 189 Vt. 345, 19 A.3d 154. As we noted in the first appeal, Brett has been eligible for home-based long-term care through the Choices program since 2007. *Id.* ¶ 2. She is in her mid-eighties, disabled, and living with her daughter. Brett initially sought only five days a week of third-party personal care services through Choices because her daughter cared for her on weekends. From 2007 through 2009, DCF determined Brett's patient share for five days a week of personal care services provided by Choices to be zero after deducting from her gross income, among other things, $1,451 in noncovered medical expenses for personal care services provided by her daughter the other two days. Brett's monthly patient share increased to $45 between April and June 2009. In July 2009, DCF determined Brett's monthly patient share to be $1,155, concluding that the cost of personal care services provided by her daughter, beyond the five days covered by Choices, could no longer be deducted as noncovered medical services as the result of DAIL's decision that seven days of general supervision was not medically necessary.

¶ 8. Brett appealed DCF's patient-share determination to the Human Services Board, which found that the evidence supported the medical necessity of covered personal care services seven days a week. Because Choices provided Brett with personal care services for only the five days that she had requested, the Board ordered DCF to deduct the cost of the additional two days of personal care services provided by her daughter, thereby reducing her patient share to nearly zero. The Secretary of the Agency of Human Services reversed that decision, concluding that the Board had granted relief beyond Brett's appeal by providing personal care services for seven days when she was asking only for five days and had contravened state and federal law by deducting

medical expenses that were or could be covered by Choices. The Secretary made no finding as to the medical necessity of the additional two days of care.

¶ 9. On appeal to this Court, Brett argued that the two additional days of personal care services provided by her daughter should be deducted because they were medically necessary and not covered by Choices even though Choices might have covered them if she had asked for such coverage. We rejected this argument, finding no compelling basis to overturn the Secretary's determination that DCF correctly disallowed the deduction because Brett could have asked for and received personal care services for the additional days under the Choices program. See *In re Brett*, 2011 VT 28, ¶¶ 12-13. Concluding that the additional two days of personal care services were coverable under Vermont's Medicaid statutes given Brett's condition, we upheld the Secretary's determination that costs for those services could not be deducted from her patient share. *Id.* ¶ 17. We noted that Brett could request seven days of personal care under the Choices program, in which case it would be up to DAIL staff to determine whether those services were medically necessary. *Id.*

¶ 10. We also noted Brett's argument that her personal care services, even if listed as coverable under the Choices program, were in fact noncoverable in her case because the *amount* of services she required exceeded the program limits. *Id.* ¶ 17 n.3. We stated that until Brett requested the additional days of care, the Agency could not know how many additional hours she wanted. *Id.* We acknowledged that the Choices regulations established maximum hours for certain services, but noted that variances could be obtained if necessary to protect the beneficiary's health. *Id.* We specifically left open "the question of whether, upon denial of a variance, those services would be considered 'noncovered' for deduction purposes." *Id.*

¶ 11. That question is now before us. Following this Court's prior ruling, DCF notified Brett that her patient share would be set at $1,353 beginning on May 1, 2011. Brett requested reconsideration and a fair hearing through DCF's variance procedure. Meanwhile, DAIL conducted its annual assessment of Brett's Choices service plan. Brett requested 115 hours of personal care services every two weeks, a significant increase of hours from previous requests because of her need to make up for the hours that had been provided by her daughter but for which she no

longer received a deduction from her patient share. After review, DAIL denied the request for increased services, approving only 68.75 hours of personal care services for each two-week period. Brett did not appeal that decision but instead requested that DCF allow a deduction for the cost of general supervision or for the cost of 3.3 hours per day for personal care services (the difference between her request to DAIL and the services DAIL actually approved) in calculating her patient share. DCF denied the request.

¶ 12. Brett appealed to the Human Services Board, arguing in relevant part that the additional 3.3 hours of personal care services were medically necessary "noncovered" services because DAIL had refused to grant a variance for the additional hours. Following a hearing, the hearing officer recommended that the Board affirm DCF's patient-share calculation. The Board adopted the proposed order, concluding that Brett did not meet the criteria for a deduction based on general supervision and that the additional requested hours could not be considered noncovered services under the Medicaid plan pursuant to our decision in *Brett*. The Board also noted that Brett had failed to avail herself of her right to appeal DAIL's determination of her medical needs under the Choices program.

## B. Leslie McCool

¶ 13. Leslie McCool has been eligible for home-based long-term care through Choices since 2004. She is in her mid-sixties, disabled with multiple sclerosis and diabetes, and living with her son. In August 2011, DAIL reassessed McCool's Choices plan. McCool requested 152.5 hours of personal care services every two weeks. DAIL declined to approve more than the 115 hours of personal care services per-two week period that she had received in previous years. McCool did not appeal DAIL's determination but sought reconsideration of DCF's calculation of her monthly patient share. DCF issued a decision on December 7, 2011 confirming her patient share without change.

¶ 14. McCool appealed DCF's decision to the Human Services Board. Following a fair hearing, the Board approved the hearing officer's proposed findings and order recommending that DCF's decision be upheld. The Board ruled that McCool did not meet the criteria to allow personal care services for general supervision and that her patient share could not be reduced based on a deduction

for additional personal care services for ADLs because such services were coverable under Medicaid. The Board stated that McCool had the option of asking DAIL to reassess her needs before her next annual review and then appealing DAIL's decision if she was not satisfied.

¶ 15. Petitioners Brett and McCool each appealed from the Board's rulings, and we consolidated the two cases for purposes of briefing and argument. In their consolidated brief, petitioners argue that DCF's decision not to deduct from their respective patient shares necessary medical expenses for personal care services denied by DAIL conflicts with *Brett* and federal law. In response, DCF argues that: (1) DAIL determined in both cases that the requested additional personal care services were not medically necessary; (2) those determinations became final when petitioners failed to appeal them; and (3) because the requested services are not medically necessary, payment for the services may not be deducted from petitioners' patient shares. In a separate argument on which DCF takes no position, McCool argues that she is eligible for in forma pauperis status on appeal.

### III. Patient Share Deduction

#### A.

¶ 16. During the course of this case, DCF's position seems to have shifted. The position initially taken by DCF and ultimately accepted by the Board in both cases is that our decision in *Brett* precluded petitioners from obtaining deductions from their patient shares for personal care services associated with ADLs or IADLs because those services are "coverable" under Choices, a Medicaid waiver program. The argument rests on our holding in *Brett*, in which we did not find compelling error in the Secretary's interpretation of the word "noncovered" for Medicaid purposes to mean "not-coverable." *Id.* ¶ 12.

¶ 17. Our holding in *Brett* must be considered in the context of the circumstances of that case. In *Brett*, the petitioner sought deductions for noncovered services that she never requested — the two additional days of personal care services rendered beyond the five days of personal care services that she had requested and received through the Choices program. We noted that if a Medicaid beneficiary could request a limited number of days of personal care services and then compel DCF to deduct from her

patient share additional personal services that were never requested, the beneficiary, rather than the agency vested with such authority, "would become the architect of benefit administration." *Id.* ¶ 13.

¶ 18. That is not the situation here. In these cases, petitioners requested the additional personal care services and were denied those services under Choices, the Medicaid waiver program. In *Brett*, we expressly left open the question of whether "coverable" services that are requested but denied through the variance procedure may be considered "noncovered" for purposes of allowing deductions from patient shares. *Id.* ¶ 17 n.3. That unresolved question is essentially before us here.

¶ 19. ■ As we noted in *Brett*, *id.* ¶ 11, applicable federal regulations require deductions from the patient share for necessary medical care "recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses." 42 C.F.R. § 435.735(c)(4)(ii); see also 42 U.S.C. § 1396a(r)(1)(A)(ii) (providing that with respect to post-eligibility treatment of income of individuals receiving home-based services under waiver program, "there shall be taken into account amounts for . . . necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses"). DCF's regulations expressly recognize this requirement in the context of its spend-down regulations. See Patient Share Regulations § 4452.3 ("The department will allow a deduction for noncovered personal care services provided in an individual's own home . . . when they are medically necessary in relation to an individual's medical condition.").

¶ 20. A recent federal court decision supports petitioners' position that they are entitled to deductions for medically necessary requested personal care services potentially coverable under the Choices program but not in fact covered under the program. The Fourth Circuit of the United States Court of Appeals examined the phrase "not covered under the State plan" in the course of reviewing the State of Maryland's challenge to CMS's disapproval of an amendment to the state's Medicaid plan that would have eliminated deductions for medical expenses incurred by Medicaid recipients before they became eligible for benefits. *Md. Dep't of*

*Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 426 (4th Cir. 2008). After noting CMS's longstanding policy of mandating consistent medical-expense deductions in both spend-down and post-eligibility processes, the court stated that CMS had traditionally interpreted the phrase "not covered under the State plan" to refer to "any medical service not paid for by Medicaid." *Id.* at 434. Rejecting Maryland's argument that the phrase referred only to "services that Medicaid never covers and for which it never pays," *id.*, and after reviewing the legislative history of the applicable federal statute, the court concluded that CMS's more inclusive definition was reasonable and within its administrative authority. *Id.* at 434-36.

¶ 21. ▉ DCF's position before the Board is at odds with the interpretation of a federal law embraced by the federal agency responsible for administering that law. See *id.* at 428 (noting that deference to CMS in connection with interpretation of Medicaid statutes is "particularly warranted" given that the Medicaid statute is "a prototypical complex and highly technical regulatory program") (quotation omitted). CMS takes the position that, for eligibility purposes, as required by 42 U.S.C. § 1396a(r)(1)(A), "services not covered under a State's plan are any services not paid for by Medicaid for that particular individual, regardless of the reason for non-payment. These include services listed as covered services in the State plan, as well as services the plan does not cover." *Miller v. Olszewski*, No. 09-13683, 2009 WL 5201792, at *5 (E.D. Mich. 2009). If we embraced DCF's initial interpretation of the post-eligibility patient share requirements, Vermont's program would likely be out of compliance with the applicable federal law on the subject, as interpreted by CMS.

¶ 22. DCF shifts its focus, and distinguishes *Miller* and *Maryland Department of Health* by stating that those cases involved requested deductions from patient shares for uncovered but *medically necessary* services. According to DCF, DAIL has already made final unappealed determinations that the additional services requested by petitioners are not medically necessary.

¶ 23. Herein lies the shift in DCF's position. DCF now concedes that it would allow a deduction from the patient share for medically necessary care beyond what Medicaid provides, without regard to whether the type of service in question is among the types of services covered by the program. Reinforcing this

concession is DCF's own regulation setting forth the sequence of permissible deductions in the context of eligibility determinations, which includes not only "[n]oncovered medical expenses" but also "[c]overed medical expenses . . . that exceed limitations on amount, duration, or scope of services covered." Patient Share Regulations § 4442(b)-(c).

¶ 24. ■ ■ Based on the applicable federal statutes and regulations, the federal case law interpreting them, and DCF's own regulations implementing the federal law, we hold that expenses for medically necessary, requested personal care services generally covered but not paid for under an individual beneficiary's Choices plan are deductible from that beneficiary's patient share, "subject to reasonable limits the agency may establish on amounts of these expenses." 42 C.F.R. § 435.735(c)(4)(ii). That is the case irrespective of whether DCF considers the services to be noncovered, see Patient Share Regulations § 4442(b), or covered but exceeding the limitations of the amount of the services covered under the plan, see *id.* § 4442(c). Unlike in *Brett*, here petitioners requested the services for which they were denied coverage. Thus, under DCF's own regulations implementing federal law, the services are not covered under their Choices plans, and petitioners are entitled to deductions for those services as long as the services are medically necessary.

## B.

¶ 25. Although DCF no longer contests the above proposition, it argues that DAIL's decision not to pay for the additional personal care services was tantamount to a determination that the services were not medically necessary. Given that petitioners did not appeal the respective DAIL decisions declining to provide the additional personal care services, DCF argues, they cannot now assert that the services are medically necessary. DCF's position rests on the premise that DAIL approves all covered medically necessary expenses, and that its denial of the services in petitioners' cases necessarily reflects a conclusion that they were not medically necessary.

¶ 26. ■ There is no doubt that expenses for personal care services cannot be deducted from patient shares unless they are medically necessary. That is a stated condition under the Medicaid laws cited above. See 42 U.S.C. § 1396a(r)(1)(A)(ii) (requiring to be

taken into account "necessary medical or remedial care . . . not covered under the State plan"); 42 C.F.R. § 435.735(c)(4)(ii) (requiring deduction for "[n]ecessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan"); see also Patient Share Regulations § 4452.3 (allowing deduction for noncovered personal care services provided in individual's home "when they are medically necessary in relation to an individual's medical condition").

¶ 27. We are left then with DCF's claim that, for purposes of determining deductions from patient shares, DAIL made final unappealed determinations that the requested additional personal care services were not medically necessary. In support of this argument, DCF cites three cases, one for the general preservation rule that matters not objected to in the proceeding below are not subject to review on appeal — *Passion v. Dep't of Soc. & Rehab. Servs.*, 166 Vt. 596, 597-98, 689 A.2d 459, 462 (1997) (mem.) — and the other two for the general principle that administrative remedies or procedures established by agreement or law must be exhausted before resort to the courts — *In re D.A. Assocs.*, 150 Vt. 18, 20, 547 A.2d 1325, 1326 (1988), and *Ploof v. Village of Enosburg Falls*, 147 Vt. 196, 200, 514 A.2d 1039, 1042-43 (1986).

¶ 28. This case is not comparable to those cited by DCF. Here, petitioners sought additional deductions from their patient shares pursuant to the administrative procedures set forth in DCF's regulations. They raised in those proceedings the very same issues that they raise on appeal. DCF denied petitioners' requests for the increased deductions, and petitioners were entitled to appeal from those decisions. There is no failure to preserve any issues or to exhaust administrative remedies within the context of these proceedings. More to the point, neither the applicable regulations nor the record in this case support DCF's argument that DAIL's rejection of petitioners' request for additional personal care services reflects a determination that the services were not medically necessary.

¶ 29. DCF does not deny that under DAIL's regulations the services available through the Choices program, including the hours of personal care services available for assisting patients with specific ADLs and IADLs, are subject to caps that are tied to a patient's determined category of clinical need. CFC Regulations § VIII. A separate provision allows DAIL to grant variances from the caps. *Id.* § XI. If the variance provision required that patients

be afforded all medically necessary services within the categories of services provided in the Choices program, DCF's argument that DAIL was the proper venue for litigating the medical necessity of the additional personal care services might have force.

¶ 30. But nothing in the variance regulation, nor the CFC regulations more broadly, expressly requires DAIL to provide program beneficiaries all medically necessary services within the categories of services available through Choices. The variance regulation provides:

> The Department may grant variances to these regulations. Variances may be granted upon determination that:
>
> 1. The variance will otherwise meet the goals of the Choices for Care waiver; and
>
> 2. The variance is necessary to protect or maintain the health, safety or welfare of the individual. The need for a variance must be documented and the documentation presented at the time of the variance request.

*Id.* § XI(A). Even assuming that the second prong of this test is functionally equivalent to a determination of medical necessity, the fact that the regulation, on its face, gives DAIL discretion as to whether to grant a variance undermines DCF's claim that a denial of services is, as a matter of law, tantamount to a finding of no medical necessity.

¶ 31. ■ Moreover, the records in these consolidated cases do not support — and in the McCool case actually contradict — DCF's assertion that DAIL concluded that the additional services were not medically necessary. At the patient-share hearings before the hearing officer, both petitioners attempted to demonstrate through witness testimony and 288B forms from treating physicians that the requested additional personal care services were medically necessary. The hearing officer at times limited such evidence under the assumption that our decision in *Brett* precluded deductions from patient shares for services that could be covered by Choices. Nevertheless, Brett provided testimony from her Choices case manager, her caregiver daughter, and her treating nurse practitioner describing her medical condition and detailing the time necessary to assist her in each of the ADLs.

¶ 32. For its part, DCF presented the testimony of DAIL's long-term clinical coordinator to explain the basis for denying

Brett's request for additional personal care services. Although she stated her opinion that Brett was receiving all medically necessary services under the Choices program, she acknowledged that she conducted her assessment based solely on a "paper review" of the case manager's submission and that her denial of the additional requested coverage was based on the lack of any functional change in Brett's condition since the last annual review. She explained that there were maximum amounts of time set for each ADL or IADL under CFC Regulations § VIII, and that additional time beyond those maximums is generally granted under the variance procedure only if there has been changes in the beneficiary's condition since the most recent assessment.

¶ 33. The case manager testified that the DAIL coordinator had told her that she could not justify the additional hours because the case manager's comments as to each of the ADLs did not show a change in Brett's condition. According to the case manager, she concurred that Brett's condition had not recently deteriorated significantly, but she explained to the DAIL coordinator that Brett was seeking coverage for additional medically necessary third-party personal care services because her expenses for those services, which had previously been provided by her daughter on weekends, were no longer being deducted from Brett's patient share obligation. The DAIL coordinator acknowledged having this discussion with Brett's case manager, but nonetheless denied the additional hours based on there being no significant change in Brett's medical condition. In its decision, the Board did not address the medical necessity of the requested additional personal care services, but rather ruled that "noncovered" meant "non-coverable" under *Brett* and that Brett had failed to appeal DAIL's determination of her needs.

¶ 34. Nothing in this record supports the assertion that DAIL concluded that the services were not medically necessary; its determination turned on the lack of sufficient deterioration in Brett's condition since its prior assessment to warrant additional personal care services without consideration of the fact that the "additional" services had been provided all along by Brett's daughter. Nor did the Board make a finding on the medical necessity of the services initially requested by Brett from DAIL, for which she subsequently sought a deduction in the calculation of her patient share.

¶ 35. Similarly, at McCool's patient-share hearing, a DAIL representative testified that McCool could resubmit a request for additional hours under the variance procedure if she could show a "significant functional decline" from the last assessment. When McCool's attorney attempted to pursue further the process underlying a reassessment review and variance procedure, the hearing officer stated that the case was really about whether McCool met the requirements for general supervision and that this was not the forum "to have a determination of whether the original calculation by DAIL was accurate or not because there are separate appeal rights from that that could have been taken at the time." Nevertheless, McCool was able to present the testimony of her treating physician, her caregiver son, and her case manager. Those witnesses testified about the significant deterioration of McCool's medical condition, and the son expressed frustration at DCF's decision to no longer allow a deduction for additional personal care services provided by him. After making numerous findings regarding McCool's significant needs, the Board concluded that the evidence did not support a finding that McCool needed general supervision services, but that the evidence did support "the need for additional time for ADLs." The Board asserted that her "case is compelling" and "her need for care is evident" but concluded that she was "seek[ing] redress through the wrong mechanism."

¶ 36. The record in McCool's hearing not only fails to support DCF's position that the requested services were not medically necessary; it flatly contradicts that position. The Board made an express finding that the evidence supported the need for additional time for ADLs. It did not specify how many additional hours of ADLs were medically necessary.

¶ 37. Accordingly, we reverse the Board's orders in each of the consolidated cases and remand the cases to the Board. In Brett's case, the Board should determine whether the additional personal care services for which petitioners sought a deduction were medically necessary, and, if so, how many additional hours of personal service care were medically necessary. Brett is entitled to deductions from her patient share for the reasonable additional personal care expenses to the extent they were medically necessary. In McCool's case, the Board has already found that additional services for ADLs were warranted; it should determine the

number of additional hours and calculate McCool's patient share accordingly.[1]

## IV. In Forma Pauperis Status

¶ 38. McCool asks this Court to grant her application for in forma pauperis (IFP) status on appeal. We initially denied this request based on the fact that the combined income of her household, which includes her son, exceeds 150% of the federal poverty level and thus does not meet the requirements of Vermont Rule of Civil Procedure 3.1(b)(1). McCool sought reconsideration of that decision, however, and we granted her conditional IFP status pending further consideration along with our review of the merits of the case. Upon reconsideration, we now grant McCool's application.

¶ 39. Under our rules, we will grant an application for IFP status on appeal if the applicant satisfies the criteria set forth in V.R.C.P. 3.1(b). See V.R.A.P. 24(a)-(b). Civil Rule 3.1(b) states in relevant part:

> (1) If the affidavit sets forth that the applicant is a recipient of any kind of welfare aid which constitutes a major portion of subsistence or is a person whose gross income is at or below 150% of the poverty income guidelines for nonfarm families established under the Community Services Act of 1974, the entire fee and costs of service shall be waived. For purposes of this paragraph, income of the applicant's cohabiting family members shall be deemed to be income of the applicant.

> (2) If the clerk or designee finds that the movant is unable to pay the entry fee without expending income or liquid resources necessary for the maintenance of the movant and all dependents, the entire entry fee shall be waived.

> (3) If the clerk or designee finds that the movant is unable to pay the costs of service without expending

---

[1] Because we conclude that DAIL made its determination on a different basis in these cases, we need not address the more general question of whether if DAIL declines to provide requested services in the Choices program on the basis that the services are not medically necessary an applicant must pursue his or her remedies through an appeal of the DAIL determination.

income or liquid resources necessary for the maintenance of the movant and all dependents, the costs of service shall be waived.

¶ 40. ▓▓ ▓▓ Our initial denial was based on the fact that McCool's income, when combined with that of her son, left her above the income threshold for IFP status under Civil Rule 3.1(b)(1).[2] The provision including all household income in the IFP eligibility consideration applies only to Rule 3.1(b)(1), however. It does not apply to the provisions in Rule 3.1(b)(2)-(3), which permit the waiver of entry fees and the costs of service upon a finding that the applicant is unable to pay these costs "without expending income or liquid resources necessary for the maintenance of the movant and all dependents." In this case, McCool is a long-term-care Medicaid beneficiary who must pay all of her income toward her care except for a maintenance allowance, medical costs, and certain other specific deductions. Patient Share Regulations § 4462. The maintenance allowance is designed to provide a reasonable amount for food, shelter, and clothing to meet her personal needs. *Id.* § 4462.1. Because requiring her to pay a filing fee and for the costs of service would compel her to spend part of her maintenance allowance set aside for her basic needs, on the basis of V.R.C.P. 3.1(b)(2)-(3) we grant her motion to waive the entry fee and costs of service.

*Petitioner Leslie McCool's application to proceed in forma pauperis and have the filing fee waived is granted. The Board's January 9, 2012 and June 11, 2012 decisions are reversed, and the cases are remanded to the Board for it to reconsider petitioners' requests for deductions from their patient shares in light of this opinion.*

---

[2] Apparently, Appellate Rule 24 was not updated in 2006 when Civil Rule 3.1 was amended to add a sentence requiring that the income of cohabitating family members be counted in considering the applicant's income under the criteria set forth in what is now Civil Rule 3.1(b)(1). Because we resolve this petition on different grounds, we need not address the impact of this discrepancy between the civil and appellate rules. We refer this matter to the Civil Rules Committee to address the discrepancy and ensure that our civil and appellate rules are consistent.