2015 VT 6

## In re Bernice Landry

[119 A.3d 455]

No. 13-452

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Durkin, Supr. J., Specially Assigned**

Opinion Filed January 9, 2015

Motion for Reargument Denied March 12, 2015

*William R. Dysart, Vermont Legal Aid, Inc.*, Burlington, for Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Kristin L. Clouser* and *Benjamin D. Battles*, Assistant Attorneys General, Waterbury, for Appellee.

¶ 1. **Durkin, Supr. J.,** Specially Assigned. Petitioner Bernice Landry appeals from a decision of the Secretary of the Agency of Human Services reversing a Human Services Board order awarding her long-term care Medicaid benefits. The Secretary determined that the Board erred in applying the doctrine of equitable estoppel to allow for the award of benefits retroactive to thirteen months preceding petitioner's fifth and final application; the Board had reasoned that each notice of decision denying petitioner's four

prior applications was misleading because the notices informed petitioner of her rights to appeal or reapply "at any time," but failed to explain that if she chose only to reapply, her benefits would be retroactive only from the date of the new application. As explained below, we affirm the Secretary's reversal of the Board's ruling, albeit on a different basis.

¶ 2. Following an evidentiary hearing in this matter, a hearing officer issued findings which the Board adopted in their entirety, together with rendering the Board's own legal conclusions in a written decision issued in October 2013. The findings and record evidence may be summarized as follows. Petitioner was admitted to a nursing home in September 2010. She was eighty-seven years old at the time, and had a diagnosis of dementia and Alzheimer's disease. Petitioner's adult daughter, who had the authority to act on petitioner's behalf by virtue of a power of attorney, submitted an application for long-term care Medicaid benefits in January 2011. The application sought coverage for petitioner, retroactive to October 1, 2010, pursuant to a Medicaid rule authorizing benefits for up to three months preceding the month of application.

¶ 3. A long-term care benefits specialist with the Department for Children and Families testified that, in response to the application, she sent two separate verification requests to petitioner's daughter and an administrator at petitioner's nursing home. Each request sought information necessary to confirm petitioner's financial eligibility, including bank, income, and tax records. The benefits specialist also attempted to schedule a telephone interview with the petitioner or her daughter, all in an effort to obtain the requested information in support of petitioner's application.

¶ 4. The Department received no response to these requests. Accordingly, in March 2011, the Department issued a Notice of Decision ("Notice") denying the application. The Notice cited petitioner's failure to provide the Department with "all the information we need" to determine her eligibility, and explained more specifically that "[t]here was no response to Department requests for verification and the required telephone interview."

¶ 5. Apart from denying the application, the Notice informed petitioner that she had the right to appeal the Department decision or "may reapply at any time." Under a caption labeled "IMPORTANT," the Notice stated that information concerning petitioner's "right to appeal this action" could be found on the back of the Notice. The information explained that petitioner had

the right to appeal the Department's decision by requesting a fair hearing within ninety days from the date the Notice was mailed. No appeal of this initial denial was filed by petitioner or a person acting on her behalf within the ninety-day limit.

¶ 6. Petitioner's daughter submitted a second application for long-term care Medicaid benefits in June 2011, three months after the Department's denial of the initial application. Again, the benefits specialist sent verification requests to petitioner's daughter and nursing home administrator seeking the same information that was missing from the original application. Again, the Department received no response. Accordingly, in August 2011, the Department issued a second Notice denying the application for the same reasons as stated in response to the first application. This second Notice again informed petitioner of her right to "reapply at any time" or to appeal within ninety days. No appeal or request for a fair hearing was filed from this second denial.

¶ 7. In September 2011, petitioner's daughter contacted the benefits specialist by email, expressing her frustration with the Department's decisions and seeking further assistance. In response, the benefits specialist recalled the Department's letters and telephone messages, which had gone unanswered, outlined the forms and documents required for verification of petitioner's eligibility, and offered to meet petitioner's daughter in person to discuss the case. Petitioner's daughter explained that the telephone messages may have been "lost," and acknowledged: "I dropped the ball. I should have been more vigilant in being on top of this."

¶ 8. In mid-September 2011, the benefits specialist and petitioner's daughter met in person to discuss the case. The benefits specialist could not recall exactly what she said at the meeting regarding retroactive benefits, but testified that she routinely tells applicants that they may be able to receive benefits for the three months prior to the date of the "current application." Also on the day of the meeting, petitioner's daughter submitted a third application for benefits, and in response she received a letter from the Department outlining the additional documentation required for verification of petitioner's financial eligibility. The Department did not receive any further documentation from petitioner after the meeting or the letter. Accordingly, in October 2011, the application was denied for "failure to provide all the information we need." As before, the Notice informed applicant of her right to

"reapply at any time" or appeal. No appeal was filed from this third Notice.

¶ 9. With her daughter's assistance, petitioner submitted a fourth application in December 2011. Two verification requests from the Department for additional information went unanswered, and the application was denied in January 2012. Once again, the Notice stated that petitioner could "reapply at any time" or appeal from the decision. No appeal was filed from this fourth Notice.

¶ 10. With the assistance of her son, petitioner filed a fifth application for benefits in February 2012. This time, additional information verifying petitioner's financial eligibility was provided, and the application was approved by the Department in May 2012 with benefits retroactive to November 2011, which was three months prior to the date of the fifth and final application. Petitioner appealed that decision, seeking coverage retroactive to October 2010, which would have been three months prior to her first application from January 2011.

¶ 11. An evidentiary hearing was held in July 2013 before a Department hearing officer. The Board adopted the hearing officer's findings and issued a decision reversing the Department's decision to limit retroactive benefits to November 2011. The Board concluded that, for reasons of equitable estoppel, petitioner may be awarded benefits retroactive to October 1, 2010 based on the date of the initial application.[1] See 3 V.S.A. § 3091(c) (providing that Board may approve hearing officer's findings and "adopt them as the findings of the board"); id. § 3091(d) (providing that after a fair hearing, "the board may affirm, modify or reverse decisions of the agency" or Department). The Board found that petitioner's daughter "credibly" and "reasonabl[y]" believed that the proviso in the Notices informing her of the right to "reapply at any time" meant that she could resubmit the same application and retain retroactive coverage from the date of the original application without the need to appeal. "[A]t best," the Board concluded, the Notices were "confusing" in stating that petitioner could "reapply at any time" while omitting "essential information" about the effect of a reapplication on the period of retroactive coverage. This conclusion was further supported, in the Board's view, by the Department's "variable" approach to granting retro-

---

[1] The Board remanded petitioner's application to the Department, with a directive that the Department "consider her application retroactive to October 1, 2010."

active coverage beyond the three-month period established in the proviso.[2] The Board concluded that these findings supported application of the doctrine of equitable estoppel to toll the ninety-day period for appeal from the first denial of coverage, and thus permitted a retroactive award for the preceding three months, to October 1, 2010.

¶ 12. The Department sought review by the Secretary, who reversed the Board's decision. The Secretary observed that each of the Notices received by petitioner fully complied with Medicaid rules by providing a statement of the Department's decision, the reasons therefore, the right to appeal, and the right to reapply "at any time." Nothing further — in the Secretary's view — was required. Moreover, nothing in the Notices, the Secretary concluded, "indicate[d] that petitioner could maintain the same period of retroactive coverage in subsequent applications that was operative in her initial application that was denied and not appealed." Finally, the Secretary observed that nothing in the record would have supported an application to extend the time for submitting the requested verification for "good cause," as allowed under standard Medicaid procedure.[3] Petitioner did not respond to the Department's multiple requests for verification, did not advise the Department of any valid reasons for failing to respond, and indeed informed the Department's benefits specialist that the failure to respond was her responsibility, that she had "dropped the ball." Accordingly, the Secretary found no justification to invoke the doctrine of equitable estoppel, and reversed the Board's decision. This appeal by petitioner followed.

¶ 13. ■ ■ The Secretary is authorized by statute to review all Board decisions governing Medicaid benefits, and may reverse or modify a decision where the Board's "findings of fact lack any support in the record" or the decision "implicates the validity or

---

[2] The record before us does not include references to specific applications that resulted in retroactive benefits being awarded for a period greater than three months prior to the pending application. However, the Department appears to concede that such awards may have occurred in the past.

[3] Medicaid procedure directs that an application is to be denied after thirty days if there is no response to a request for verification, but allows a thirty-day extension if the applicant "indicates that he or she is having difficulty in obtaining any or all of the information" and provides "good cause" for the delay, defined to include illness, the refusal of a third party to provide the necessary documentation, or lost or stolen mail. Medicaid Procedure P-2401.

applicability of any agency policy or rule." 3 V.S.A. § 3091(h)(1) (A)(i), (ii). As we have previously explained, under this provision the Secretary essentially "acts as an appellate body, reviewing the Board's findings and conclusions to ensure that it applied the appropriate legal standards under the relevant agency rules and policies, and that there is some factual support for its decision." *In re D'Antonio*, 2007 VT 100, ¶ 8, 182 Vt. 599, 939 A.2d 493 (mem.). Thus, the Secretary must uphold the Board's factual findings "if the record contains any credible evidence that fairly and reasonably" supports those findings. *Jacobus v. Dep't of PATH*, 2004 VT 70, ¶ 7, 177 Vt. 496, 857 A.2d 785 (mem.) (quotation omitted). However, "[i]n matters of state law, this Court generally defers to the Secretary regarding interpretations of the governing statutes . . . absent a compelling indication of error." *In re Brett*, 2011 VT 28, ¶ 13, 189 Vt. 345, 19 A.3d 154. Further relevant to the standard of review is the premise of petitioner's legal claim: that her constitutionally protected right to due process includes a right to a clear notice of the impact of her failure to appeal the Department's decision. This Court has previously made clear that rulings which implicate the right to due process or other issues of constitutional dimension require no deference, "for agencies are in no better position to resolve constitutional questions than the courts." *In re Vt. Ry.*, 171 Vt. 496, 500, 769 A.2d 648, 653 (2000).

¶ 14. Petitioner asserts that the Secretary exceeded his authority in rejecting the Board's factual finding that petitioner believed her reapplications would maintain the original three-month retroactive coverage period. There is some merit to the claim. As noted, the Secretary must defer to the Board's factual findings "unless they are completely unsupported by the record." *In re Ryan*, 2008 VT 93, ¶ 17, 184 Vt. 597, 958 A.2d 678 (mem.). Here, the uncontradicted testimony by petitioner's daughter concerning her understanding that coverage would remain retroactive from the date of the initial application appears to provide sufficient support for the Board's factual finding.

¶ 15. The question remains, however, whether the Board properly applied the doctrine of equitable estoppel based upon these facts. To recall, the Board applied the equitable estoppel doctrine to prohibit the Department from limiting petitioner's ability to seek retroactive benefits back to October 2010, some thirteen months prior to the date of her final benefits application.

¶ 16. ▇ The doctrine of equitable estoppel, when the facts justify its application, forecloses a party "from asserting rights which may have existed against another party who in good faith has changed . . . her position in reliance upon [the first party's] earlier representations." *Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 411 (1982). We have previously concluded that the Human Services Board has the authority to apply the equitable estoppel doctrine when reviewing challenges to benefits determinations, both because of its authority to reverse or modify agency decisions, pursuant to 3 V.S.A. § 3091(d), and because of the Board's inherent authority to allow an appealing applicant to assert an equitable defense. *Stevens v. Dep't of Soc. Welfare*, 159 Vt. 408, 417, 620 A.2d 737, 741-42 (1992) (concluding that "the Board's statutory authorization to determine whether [benefit] decisions are in conflict with state of federal law is [not] limited in any respect, much less that it excludes consideration of equitable estoppel as a defense"). Therefore, since the Board was authorized to consider petitioner's equitable estoppel defense, we consider that legal determination anew in this appeal.

¶ 17. ▇ The Board, citing to our *Stevens* decision, correctly summarized the four criteria for the proper application of the equitable estoppel doctrine, which we summarize as follows: "(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon [by the party asserting estoppel] . . .; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped." *Id.* at 421, 620 A.2d at 744 (citing *Burlington Fire Fighters' Ass'n v. City of Burlington*, 149 Vt. 293, 299, 543 A.2d 686, 690-91 (1988)). We further note that when equitable estoppel is being asserted against a governmental entity, there is a fifth criterion that must be considered: "the party seeking to estop the government must demonstrate that 'the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case.'" *Vt. N. Props. v. Village of Derby Ctr.*, 2014 VT 73, ¶ 27, 197 Vt. 130, 102 A.3d 1084 (quoting *In re Lyon*, 2005 VT 63, ¶ 17, 178 Vt. 232, 882 A.2d 1143).

¶ 18. ▇ The Board and the Secretary both focused their analysis upon a hybrid of the legal questions raised by elements

three and four, specifically focusing upon a legal determination of whether it was "reasonable" for petitioner's daughter to conclude that she need not file an appeal from the earlier denials of retroactive benefits and that she could "simply" reapply and her mother would be awarded benefits retroactive to the first application. For several reasons, we cannot agree with the legal conclusion that her reliance on this mistaken assumption was reasonable. First, the daughter's assumption ignores that the denial notices specifically advised of petitioner's right to appeal the denial. That denial, and each of the three subsequent denials, were all based upon the daughter's failure to provide the requested verifications needed to determine whether petitioner was eligible for retroactive coverage.

¶ 19. Indeed, petitioner's daughter acknowledged that the failure to respond to the Department's repeated verification requests was her responsibility and that she simply "dropped the ball." For this Court to adopt the Board's legal conclusion that the daughter's reliance on her mistaken understanding was "reasonable," we must ignore her own admissions of failure to respond in any manner, and must assign legal insignificance to the explicit notice that if she disagreed with the Department's determination, she must appeal that determination. By failing to appeal, petitioner's daughter foreclosed her mother's right to seek retroactive benefits, based upon her first application.

¶ 20. The circumstances here are distinguishable from those in *Stevens*, where the claimant's reliance was based upon representations made directly to the claimant by a Department of Social Welfare (DSW) eligibility specialist, who specifically advised the claimant to *not* pay certain medical bills. Because claimant then had excess funds at her disposal (since she followed the eligibility specialist's advice and delayed payment of her outstanding medical bills), DSW denied her retroactive benefits, based upon her availability of excess funds. Here, petitioner's daughter's detrimental reliance was not upon advice from a Department official; she simply assumed that by ignoring the notice of the right to appeal, she could not only reapply "at any time" on her mother's behalf, but that even without appealing, her subsequent application could seek benefits back to a time prior to the application that had been denied and not appealed. Accordingly, we find no basis to apply the equitable estoppel doctrine on these facts.

¶ 21. ▮ Petitioner further asserts that the Board's decision merely allows for a remand to the Department, so that a determination may be made of whether petitioner was in fact eligible for benefits, retroactive to three months prior to her first application. However, the record before us is barren of any evidence of "good cause" on petitioner's behalf that would have supported an application to extend the time for providing the requested verification. Further, although the Board suggested that the Department's actual practice of granting retroactive coverage was "variable," there was no evidence in the record before us that the Board had, in similar circumstances, permitted retroactive coverage beyond the three-month period from the last pending application. Accordingly, we find no ground to disturb the judgment rendered by the Secretary.

*Affirmed.*