******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMPUTER REPORTING SERVICE, LLC
*v.* LOVEJOY AND ASSOCIATES,
LLC, ET AL.
(AC 37257)

Alvord, Prescott and Mullins, Js.

*Argued March 2—officially released July 19, 2016*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Michael Hartmere, judge trial referee.)

*Frederick A. Lovejoy*, self-represented, for the appellants (named defendant et al.).

*John W. Mills*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendants Lovejoy & Associates, LLC (law firm), and Attorney Frederick A. Lovejoy appeal from the judgment of the trial court rendered in favor of the plaintiff, Computer Reporting Service, LLC, on its complaint alleging, inter alia, breach of contract arising from the defendants' failure to pay for court reporting services that the plaintiff provided for several depositions taken by Lovejoy in an unrelated federal action.[1] The defendants also appeal from the judgment rendered in favor of the plaintiff on their counterclaims. The defendants claim on appeal that the court improperly (1) determined that an enforceable contract existed; (2) found that the defendants had faxed copies of the deposition notices to the plaintiff; (3) determined that Lovejoy was personally liable to the plaintiff for breach of contract in the absence of any evidence showing that he acted in his individual capacity rather than on behalf of the law firm; (4) failed to conclude that the defendants' client in the federal action, Ensign Yachts, was solely responsible for paying the plaintiff for its services; (5) awarded $13,564.64 in attorney's fees pursuant to General Statutes § 52-251a; (6) rejected the defendants' counterclaims, which alleged slander, abuse of process, and violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2012); and (7) admitted evidence presented by the plaintiff at trial despite the plaintiff's failure to comply with the court's trial management order and its alleged spoliation of other evidence.

On the basis of our review of the record, we agree with the defendants that the court improperly held Lovejoy individually liable for breach of contract, but we are not persuaded by the remainder of the defendants' claims. Accordingly, we reverse the judgment of the trial court in part, and remand the case with direction to render judgment in favor of Lovejoy as to count one of the operative complaint alleging breach of contract. We affirm the judgment in all other respects, including the court's decision to award costs and attorney's fees.

The following facts, which either were found by the court in its oral memorandum of decision or are undisputed in the record, and procedural history are relevant to our consideration of the defendants' appeal.[2] The plaintiff is a Connecticut company that provides court reporting services to attorneys throughout the state. The law firm is a limited liability company with Lovejoy as its sole member.

On or around June 18, 2010, Lovejoy, on behalf of the law firm, noticed the deposition of a witness in a federal action. Lovejoy faxed a copy of the deposition notice to the plaintiff, which the parties understood to be a request that the plaintiff provide a court reporter

to record and transcribe the noticed deposition, which was scheduled for June 24, 2010. The plaintiff performed as requested, and the defendants were later provided with a copy of a deposition transcript and a bill for $1401.32. This same procedure was followed with respect to two additional depositions, one conducted on August 20, 2010, and the other on August 23, 2010. In each instance, the plaintiff was faxed a copy of the deposition notice, provided the requested court reporting services, and later provided the defendants with a transcript and a bill. The bills for the latter two depositions were for $1246.56 and $812.49, respectively. The bills for the three depositions totaled $3460.37. The defendants accepted delivery of the transcripts and utilized them without raising any complaint about the plaintiff's services or the quality of the work product provided. The bills, however, were never paid, despite repeated collection efforts by the plaintiff.[3]

In January, 2013, the plaintiff commenced a small claims action against the defendants alleging breach of contract. The defendants successfully moved to transfer the matter to the regular docket of the Superior Court, arguing that they had a good defense to the plaintiff's claim and wished to preserve their right to appeal. See General Statutes § 51-197a (a) (no right of appeal from small claims judgment). They filed an answer on May 23, 2013, asserting a number of special defenses and three counterclaims alleging slander, abuse of process, and unfair debt collection practices. The plaintiff subsequently impleaded Ensign Yachts and filed an amended complaint. This operative amended complaint consisted of two counts: count one alleged breach of contract against the defendants, and count two alleged unjust enrichment on the part of Ensign Yachts.[4] Ensign Yachts failed to appear and was defaulted.

The matter was tried to the court, *Hon. Michael Hartmere*, judge trial referee, on June 26, 2014.[5] Following testimony and closing arguments by counsel, the court issued a brief oral decision from the bench. The court found in favor of the plaintiff on both counts of the operative complaint. With respect to the breach of contract count, the court found that the defendants had contracted with the plaintiff for court reporting services, and that they breached that contract by failing to pay for the services rendered, irrespective of any separate payment arrangement that may have existed between the defendants and Ensign Yachts. The court rejected all of the defendants' special defenses, and awarded damages of $3460.37. It also found in favor of the plaintiff on each of the defendants' counterclaims. The court noted that attorney's fees and costs would be decided at a later date, after the plaintiff had submitted the appropriate paperwork. The court rendered judgment in accordance with its oral decision on July 3, 2014.[6]

Also on July 3, 2014, the plaintiff filed a motion for attorney's fees and prejudgment interest pursuant to General Statutes § 37-3a (a). It also filed a bill of costs. On August 11, 2014, the trial court clerk issued an order indicating that, in the absence of any objection to the plaintiff's bill of costs, costs would be taxed pursuant to Practice Book § 18-5. On September 11, 2014, the court granted the plaintiff's motion for attorney's fees and awarded prejudgment interest at a rate of 5 percent. The defendants filed this appeal on October 1, 2014.[7]

I

The defendants first claim that the court improperly determined that an enforceable contract existed. Specifically, they argue that the plaintiff failed to meet its burden of establishing that there was a "meeting of the minds," which is a prerequisite to the formation of a valid contract. We are not persuaded.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 303, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008). "In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties." (Internal quotation marks omitted.) *Krondes* v. *O'Boy*, 37 Conn. App. 430, 434, 656 A.2d 692 (1995). In other words, to prove the formation of an enforceable agreement, a plaintiff must establish the existence of "a mutual assent, or a 'meeting of the minds' . . . ." *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 764, 674 A.2d 1313 (1996); see also *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.*, 159 Conn. 242, 246, 268 A.2d 391 (1970) ("burden rested on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract").

"The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were. . . . Whether the parties intended to be bound without signing a formal written document is an inference of fact [to be made by] the trial court . . . ." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454–55, 889 A.2d 850 (2006). "[M]utual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties." 1 S. Williston, Contracts (4th Ed. Lord 2007) § 4.1, p. 325.

Turning to the present case, the court determined that there was "a contractual agreement between the plaintiff and the defendants." Because there was no

written agreement, and, therefore, no definitive contract language to interpret, determining who was a party to the contract and the intent of those parties with respect to the terms of any contractual agreement involved factual determinations that we will reverse only if clearly erroneous. See *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 574–75, 119 A.3d 570 (2015). Although its decision contains no specific reference to a "meeting of the minds" and, in fact, contains very few factual findings relative to the formation of a contract,[8] a finding of mutual assent is nevertheless implicit within the court's express finding that a contract existed. See *Tsionis* v. *Martens*, 116 Conn. App. 568, 577, 976 A.2d 53 (2009). Moreover, our review of the record before the trial court reveals that there was sufficient evidence to support the court's finding that a valid contact existed.

The court found that Lovejoy had faxed copies of the deposition notices to the plaintiff.[9] It was not disputed at trial that the purpose of providing the plaintiff with notice of the depositions was to alert the plaintiff of the defendants' need for a court reporter to assist with the deposition at the time and place indicated. All parties agreed it was customary for attorneys to request court reporting services in this manner, and, thus, it was reasonable for the court to have viewed Lovejoy's actions as manifesting an offer of payment in exchange for the plaintiff's services, an offer that the plaintiff accepted by sending a reporter to the depositions to perform the requested services. The defendants have never argued that there was any confusion regarding the type of services bargained for or the cost for such services. Although the defendants claim that it was their intent that their client ultimately be responsible for the cost of the depositions, the court found that that intent was never communicated to the plaintiff until after the plaintiff sought payment from the defendants. The existence of a hidden or subjective intent on the part of one party to a contract does not render a finding of mutual assent clearly erroneous. See 1 S. Williston, supra, § 4.1, p. 325. On the basis of our review, we conclude that the court's finding that an enforceable agreement existed was supported by the record, and the evidence before the court was sufficient to support its implicit finding of mutual assent to that agreement.

## II

The defendants next claim that the court's finding that they faxed copies of the deposition notices to the plaintiff was clearly erroneous. We disagree.

"[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A find-

ing of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Surrells* v. *Belinkie*, 95 Conn. App. 764, 767, 898 A.2d 232 (2006).

The defendants rely heavily upon the fact that the copies of the deposition notices admitted as exhibits at trial contained fax transmittal data that indicated that the notices had been faxed to the plaintiff long after this action was commenced and by someone other than the defendants. The plaintiff's principal testified at trial, however, that copies of the deposition notices were faxed to the plaintiff's office by the defendants prior to the depositions and that this was how the plaintiff knew to send a reporter to cover the depositions. The plaintiff also explained that it had not kept copies of the deposition notices faxed by Lovejoy as part of its business records, and, thus, it had to obtain copies from a third party, namely, the firm that opposed the defendants in the federal action for which the depositions were noticed. Lovejoy provided contradictory testimony at trial, first agreeing that he had faxed the notices to the plaintiff, but later claiming that he had not. The court was entitled to believe the plaintiff's testimony over the testimony of Lovejoy, and, as we have often stated, it is not our role to second-guess the court's credibility determinations. See *State* v. *DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014) ("It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review." [Internal quotation marks omitted.]). Because there is evidence in the record that supports the court's finding that the defendants faxed the deposition notices to the plaintiff, and because we lack any conviction that the court made a definite mistake in this regard, we reject the defendants' claim that the court based its judgment on a clearly erroneous factual finding.

III

We turn next to the defendants' claim that the court improperly failed to conclude that, even if the defendants entered into a contract with the plaintiff, they did so only as the disclosed agents for Ensign Yachts, and, therefore, Ensign Yachts was the only party legally responsible for the plaintiff's unpaid invoices. The defendants argue that their claim finds support in general principles of agency law, which the court failed to apply properly.[10] They also argue that, although their research failed to uncover any Connecticut court decisions addressing whether an attorney could be held liable for not paying a court reporter for work con-

ducted on behalf of the attorney's client, they brought to the court's attention New York case law indicating that the client generally is responsible for payment, and the court improperly refused to adopt that approach in the present case. We are not persuaded by either of the defendants' arguments.

A

We first address the defendants' contention that, on the basis of well understood principles of agency law, the court should not have found them liable to the plaintiff for the unpaid court reporting services. We disagree.

"Unless a statute provides to the contrary . . . principals may act through agents . . . and may appoint agents by written or spoken words or other conduct." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Fairfield County National Bank* v. *DeMichely*, 185 Conn. 463, 470–71, 441 A.2d 569 (1981), citing Restatement (Second), Agency §§ 17, 26 (1958). It long has been recognized "that an agent is not liable to be sued upon contracts made [o]n behalf of his principal, if the name of his principal is disclosed, and made known to the party contracted with, *at the time of entering into the contract*." (Emphasis added; internal quotation marks omitted.) *Adams* v. *Whittlesey*, 3 Conn. 560, 566 (1821); see also *Joseph General Contracting, Inc.* v. *Couto*, supra, 317 Conn. 579 ("[a]n authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party" [internal quotation marks omitted]); *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, 236 Conn. 613, 619, 674 A.2d 805 (1996) ("[u]nder the rules of agency, [u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract" [internal quotation marks omitted]).

It is also well settled law in this state that "[i]t is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal, *as the person dealt with is not bound to inquire whether or not the agent is acting as such for another. . . .* If he would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover him." (Citations omitted; emphasis added; internal quotation marks omitted.) *Klepp Wood Flooring Corp.* v. *Butterfield*, 176 Conn. 528, 532–33, 409 A.2d 1017 (1979). Whether the defendants in the present case contracted with the plaintiff as disclosed agents for their client and, as a result, should not have been held liable for breach of contract, presents a question of fact for the

trial court. See *Pelletier Mechanical Services, LLC* v. *G & W Management, Inc.*, 162 Conn. App. 294, 308, 131 A.3d 1189 (whether agent disclosed identity of principal so as to avoid liability on contract is question of fact), cert. denied, 320 Conn. 932, 134 A.3d 622 (2016).

The defendants argued at trial that the plaintiff should have known from reading the deposition notices that the depositions were being conducted by the defendants for their client, Ensign Yachts, whose name appeared on the deposition notice. According to the defendants, this should have been sufficient to inform the plaintiff that the defendants intended to contract for the plaintiff's services solely in their capacity as an agent for their disclosed principal. The defendants also submitted into evidence a letter that Lovejoy had sent to the plaintiff on behalf of his law firm in 2007, regarding overdue payments for other deposition invoices. In the letter, Lovejoy indicated that the defendants would not pay the late invoices because "1) we are hiring [the plaintiff] as a disclosed agent of our client; thus, it is our client's responsibility to pay [the plaintiff], and 2) because of the extremely small size of this law firm, it cannot act as a bank . . . ."

In its oral decision, the court rejected the defendants' arguments. The court found that the faxing of the notice of depositions to the plaintiff did not equate to notice by the defendants that they "did not feel obligated to pay for the court reporting services." We construe this as an implicit finding that the defendants failed to give the required notice that they were contracting only in a representative capacity for Ensign Yachts. The court also found that the 2007 letter that Lovejoy had mailed years earlier involved outstanding invoices for unrelated depositions, and that "[i]t [was] not a blanket statement or notice to the plaintiff that the [defendants] did not feel obligated to pay for future services and invoices."

The law clearly places the burden on the agent to ensure that any party the agent contracts with is on notice that the agent is acting only in a representative capacity if the agent wishes to avoid personal liability. It follows that any ambiguity in that notice obligation properly should be resolved against the agent, as the other party has no obligation to investigate. The notice of deposition certainly identified that Lovejoy intended to take a deposition on behalf of a client whose name was clearly disclosed. There is no definitive language in the deposition notice, however, that reasonably can be construed as giving any clear indication as to which party would be responsible for payment of court reporting services. This is further borne out by the fact that the defendants have failed to identify how the content of the notice of deposition would have changed had the defendants wished to signal that they intended to pay the plaintiff rather than payment being made by

their client. As correctly indicated by the court, the 2007 letter does not contain any language suggesting that it was intended to pertain to all future dealings between the parties, and, thus, it has little relevance to the issues at hand. If the defendants wished to ensure that they were not held liable under any implied contractual agreement flowing from the notice of deposition that they faxed to the plaintiff, they should have clearly indicated that intent contemporaneously. Once a party has entered into a contract for services, it cannot later disclaim responsibility for payment under the theory that it was acting solely on behalf of another.[11] The agency relationship must be disclosed at the time of contracting. We will not overturn the court's implicit finding that the defendants were not acting as agents for a disclosed principal because that finding is reasonable and supported by the record.

B

The defendants also argue that the court improperly failed to consider and apply certain New York court decisions that they brought to the court's attention and that the defendants argue demonstrate that they should not be liable to the plaintiff. We agree with the plaintiff that the defendants have failed to adequately brief this argument on appeal.

"We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 179, 117 A.3d 876, certs. denied, 318 Conn. 902, 122 A.3d 631, 123 A.3d 882 (2015). Other than providing a few case citations, the defendants' brief is devoid of any discussion or legal analysis of the New York cases cited or why this court should find them instructive in light of the particular facts of the present case. Because the defendants have failed to adequately brief this argument, we decline to review it.

Perhaps more troubling than the lack of legal analysis is the apparent mischaracterization of New York law. According to the defendants, in all judicial departments of the Appellate Division of the New York Supreme Court, with the exception of the First Department, the law is that the client is responsible for court reporting costs unless those costs are specifically acknowledged and assumed by the attorney. In the First Department, the defendants state that the responsibility for payment lies with the attorney unless disclaimed. The case relied on by the defendants, however, in support of their proposition that, in all but the First Department, an attor-

ney's client generally is responsible for paying for court reporting services, *Sullivan* v. *Greene & Zinner, P.C.*, 283 App. Div. 2d 420, 723 N.Y.S.2d 869 (2001), is no longer good law. Its holding has been superseded by New York General Business Law § 399-cc (McKinney 2012), which is now the applicable law in all New York jurisdictions. Section 399-cc provides in relevant part: "Notwithstanding any other provision of law to the contrary, when an attorney of record orders or requests either orally or in writing that a stenographic record be made of any judicial proceeding, deposition, statement or interview of a party in a proceeding or of a witness related to such proceeding, *it shall be the responsibility of such attorney to pay for the services and the costs of such record* except where . . . the attorney *expressly disclaims responsibility for payment* of the stenographic service or record in writing *at the time the attorney orders or requests that the record be made*." (Emphasis added.) As previously discussed, the court found that the defendants failed expressly to disclaim responsibility for payment at the time services were requested. Accordingly, even if the court had applied New York law as the defendants requested, it is unlikely to have altered the court's decision in this case.

IV

The defendants next claim that the court improperly concluded that Lovejoy was personally liable to the plaintiff for breach of contract. According to the defendants, Lovejoy never contracted with the plaintiff in his individual capacity, but acted at all relevant times as a member of his law firm, which is a limited liability company. Thus, the defendants contend, any debt incurred as a result of Lovejoy's actions was the law firm's alone, and the plaintiff proffered no evidence on which the court could have relied to "pierce the corporate veil" or otherwise hold Lovejoy personally liable for the debt claimed by the plaintiff. We agree, and reverse that portion of the judgment holding Lovejoy liable for breach of contract.

We exercise plenary review in considering whether the court properly imposed individual liability on Lovejoy based on the facts found by the court, which themselves are subject to review only for clear error. See *Joseph General Contracting, Inc.* v. *Couto*, supra, 317 Conn. 581. In so doing, we examine the record to determine if there is sufficient evidence from which the court could have concluded that Lovejoy was acting as anything other than an agent of his law firm. Id. If no such evidence exists, the court lacked a legal basis to impose personal liability.

Individual members of a limited liability company generally are not liable for debts incurred by members on behalf of the company. See General Statutes § 34-133 (a). Section 34-133 (a) provides in relevant part:

"[A] person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise . . . ."

Our Supreme Court has stated that it is improper to hold an owner or officer of a business entity jointly and severally liable with that business solely on the basis of a theory that they engaged in "joint action." (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, supra, 317 Conn. 577. Specifically, the court stated: "We disagree with the notion that proving joint action between an entity and one of its owners and officers is the basis for finding liability. Indeed, such a theory ignores the reality that this court has recognized that the fact that [an owner of a corporation] acted on behalf of [the corporation] is no more than a reflection of the reality that all corporations act through individuals. It is axiomatic that while such an entity has a distinct legal life, it can act only through individuals." (Internal quotation marks omitted.) Id.

Our review of the record and the findings of the trial court reveals no evidence indicating that Lovejoy acted in his individual capacity rather than as a member of the law firm. Although each of the deposition notices was signed by Lovejoy, his signature appears after the name of the law firm, which is identified as the entity representing Ensign Yachts and, therefore, the law firm noticing the deposition. Accordingly, to the extent that the deposition notice represents an offer to enter into a contractual agreement, the evidence tended to show that offer was extended to the plaintiff by the law firm, not by Lovejoy individually. The court in its decision makes no factual findings on which it could have imposed individual liability. The court's decision is completely silent as to whether the court believed that Lovejoy had acted in such a way as to suggest he was contracting in his individual capacity or that it was appropriate under the facts of this case to somehow "pierce the corporate veil."[12] The plaintiff states that Lovejoy is a sole practitioner and that he and the law firm are "one and the same." That fact alone, however, simply cannot support the imposition of individual liability in contravention of § 34-133. Because there appears to be insufficient evidence to support the court's decision to hold Lovejoy personally liable for acts taken on behalf of his law firm, that decision cannot stand.

V

The defendants next claim that the court improperly awarded attorney's fees and costs totaling $13,564.64 pursuant to § 52-251a. Section 52-251a authorizes the court to award reasonable attorney's fees and costs to a prevailing plaintiff if the matter was transferred on

the defendant's motion from the small claims docket to the regular docket of the Superior Court. The defendants advance three arguments in support of this claim. First, they argue that § 52-251a is inapplicable because they did not *voluntarily* transfer the action from the small claims docket to the regular docket, but only did so at the direction of the small claims clerk and in reliance on a Judicial Branch publication concerning small claims procedures that contained no indication that a defendant could be liable for attorney's fees if he successfully moved to have a small claims matter transferred to the regular docket. Second, they argue that a portion of the attorney's fees awarded by the court was attributable to the plaintiff's prosecution of the unjust enrichment count against Ensign Yachts. Third, the defendants challenge the factual basis for the court's award, namely, arguing that the plaintiff's primary witness lied about the existence of a retainer agreement and that the $350 hourly rate contained in the retainer agreement was higher than the rate actually charged by the plaintiff's counsel. We find no merit in these arguments, each of which we address in turn.

"An award of attorney's fees [pursuant to § 52-251a] is not a matter of right. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal . . . . Because the trial court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 63–64, 762 A.2d 508 (2000).

A

The defendants' first argument concerns the applicability of § 52-251a. "Because the interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law, our review is plenary." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 276, 880 A.2d 985 (2005); see also *Lee* v. *Stanziale*, 161 Conn. App. 525, 534, 128 A.3d 579 (2015) ("proper construction of § 52-251a presents a question of law over which our review is plenary"), cert. denied, 320 Conn. 915, 131 A.3d 750 (2016).

Section 52-251a provides: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the Superior Court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court." By its operation, "[s]ection 52-

251a . . . creates a substantial and effective disincentive for a defendant who might otherwise raise defenses bordering on the frivolous in an effort to gain a tactical advantage over a plaintiff by obtaining a transfer of a case from the Small Claims division. . . . [T]he very purpose of § 52-251a is to deter . . . defendants from transferring a case from the small claims session and turning a relatively clear-cut case into a pitched legal battle." (Citation omitted; internal quotation marks omitted.) *Costanzo* v. *Mulshine*, 94 Conn. App. 655, 665, 893 A.2d 905, cert. denied, 279 Conn. 911, 902 A.2d 1070 (2006).

In *Lee* v. *Stanziale*, supra, 161 Conn. App. 534, this court established that a determination as to the applicability of § 52-251a turns upon five essential elements as plainly set forth in the statutory language: "(1) that the action originally was commenced in the small claims docket of the Superior Court; (2) that the defendant moved to transfer the action to the regular docket of the Superior Court; (3) that the action was so transferred; (4) that the plaintiff prevailed in the action; and (5) that the trial court deemed an award of attorney's fees and costs appropriate." The defendants' argument, which seeks to avoid operation of the statute, relates to the second element. The defendants do not dispute that they filed a motion to transfer the present action to the regular docket. They argue, however, that they only did so "involuntarily" because they were informed by the small claims clerk that if they wished to file counterclaims against the plaintiff in an amount exceeding $5000, they first needed to have the matter transferred to the regular docket. This hardly rendered the defendants' decision to move to transfer the matter to the regular docket "involuntary."

The docket of the small claims session of the Superior Court is barred from hearing claims seeking money damages of more than $5000 or any action alleging libel and slander. General Statutes § 51-15 (d). Accordingly, as correctly instructed by the clerk, the defendants could not file their counterclaims, which alleged slander and sought damages in excess of $5000, with the small claims court. This left the defendants with a choice: leave the matter in the small claims session and forgo raising their counterclaims, which, on the basis of their lack of success at trial were, if not frivolous, dubious at best, or move to transfer the case to the regular docket and be subject to § 52-251a. The defendants chose the latter. Because this matter was "transferred to the regular docket in the Superior Court on the motion of the defendant[s]," the court had the discretionary authority to award the prevailing plaintiff both costs and attorney's fees. General Statutes § 52-251a. There is simply no merit to the defendants' argument that § 52-251a was inapplicable on the facts presented.

B

The defendants next argue that the court improperly ordered them to pay for attorney's fees that they allege were solely or partially attributable to the plaintiff's prosecution of the unjust enrichment count against Ensign Yachts. The defendants, however, have failed to provide any analysis in support of this argument, including any legal support for their proposition that the trial court was required to engage in some apportionment of the attorney's fees. Although the defendants raised this argument to the court in their objection to the plaintiff's motion for attorney's fees, that objection also contained no legal analysis, but merely identified what the defendants noted from their review of the billing records as $6745 in fees allegedly attributable to Ensign Yachts. The court overruled the defendants' objection without comment. Because the defendants have failed to adequately brief this argument, we decline to review it further.

C

Lastly, the defendants argue that the court utilized an incorrect hourly rate of $350 in calculating its award of attorney's fees. We find no merit in this argument.

As we have indicated, we will disturb a court's calculation of attorney's fees only upon a showing of a clear abuse of discretion. Here, the court did not issue a written decision setting forth its calculations, and none of the parties sought an articulation or clarification. Nevertheless, the court awarded attorney's fees in the amount requested in the plaintiff's motion, to which were attached billing statements and an affidavit from a practicing trial attorney, who averred that both the hourly rate of $350 and the amount of time billed were reasonable and customary for the work provided. We can infer from the court's adoption of the amount of fees requested that it found the plaintiff's calculations reasonable, including the hourly rate of $350. The defendants produced no evidence suggesting that the $350 hourly rate is unreasonable or inappropriate given the nature of this type of litigation. Because there is evidentiary support for the court's award, we will not disturb its calculations.

VI

The defendants next claim that the court improperly ruled in favor of the plaintiff on their counterclaim alleging abuse of process.[13] According to the defendants, the plaintiff was liable for abuse of process because it threatened to file a grievance action against Lovejoy for failing to pay for the plaintiff's services, and it filed this action against Lovejoy individually, despite knowing that Lovejoy never did business under his own name. The court rejected the counterclaim without discussion, stating only that the defendants had failed to present sufficient evidence to establish abuse of process. Having reviewed and considered the record in this

case, including the briefs and arguments of the parties on appeal, we are not persuaded that the court committed reversible error in rejecting the defendants' abuse of process counterclaim and rendering judgment in favor of the plaintiff. This claim warrants no further discussion.

## VII

Finally, the defendants claim that the court should have precluded the plaintiff from submitting any evidence at trial in light of either (a) the plaintiff's failure to comply with the civil court trial management order or (b) its alleged spoliation of other evidence. Neither of those arguments, however, was raised to or decided by the trial court. Accordingly, they have not properly been preserved for appellate review, and we decline to review them. See *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 411, 35 A.3d 395, cert. denied, 304 Conn. 916, 40 A.3d 783 (2012).

The judgment is reversed in part and the case is remanded to the trial court with direction to render judgment in favor of Lovejoy on count one of the operative complaint. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In addition to the breach of contract count against the defendants, the operative amended complaint contains a second count alleging unjust enrichment against Ensign Yachts, Inc. (Ensign Yachts), the defendants' client and the plaintiff in the federal action, *Ensign Yachts, Inc.* v. *Jon Arrigoni et al.*, United States District Court, Docket No. 3:09CV0209 (VLB) (D. Conn. February 4, 2009). In the present case, Ensign Yachts was defaulted for failing to appear, and the court later rendered judgment on the default. Ensign Yachts has not appealed from the judgment rendered against it or participated in the present appeal. Accordingly, we refer to the law firm and Lovejoy collectively as the defendants.

[2] We note that although the court filed a copy of the portion of the June 26, 2013 trial transcript containing its oral decision, that copy is unsigned. Pursuant to Practice Book § 64-1 (a), in all civil trials to the court, the court must state a decision that "shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor," and, if the court chooses to render its decision orally, the oral decision must be recorded by a court reporter. If an appeal is filed, the court must order a transcript of its oral decision and file a *signed* copy of that transcript with the clerk of the trial court for use in the appeal. Practice Book § 64-1 (a). If that procedure is not followed, subsection (b) of Practice Book § 64-1 requires the appellant to notify the appellate clerk, who, in turn, notifies the trial judge of the oversight. After receiving notice from the appellate clerk, the court "shall thereafter comply with subsection (a)." Practice Book § 64-1 (b). Ultimately, however, it is the appellant's responsibility to ensure that this court has an adequate record for review, which necessarily includes a properly signed memorandum of decision. See Practice Book § 61-10. "When the record does not contain either a [written] memorandum of decision or a transcribed copy of an oral decision *signed by the trial court* stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review. . . . [However] [i]f there is an unsigned transcript on file in connection with an appeal, the claims of error raised by the plaintiff may be reviewed if this court determines that the transcript adequately reveals the basis of the trial court's decision." (Citation omitted; emphasis added; internal quotation marks omitted.) *Solano* v. *Calegari*, 108 Conn. App. 731, 734 n.4, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008). Although there is no indication in the record that the defendants took any step to ensure that the record contained a properly

signed transcript, because an unsigned copy is available to us and adequately reveals the basis of the court's decision, we will consider it in addressing the defendants' claims.

[3] The defendants took the position that the sole responsibility for payment of deposition costs belonged to Ensign Yachts, for whom the depositions were conducted, and that they properly forwarded the plaintiff's bills and all subsequent requests for payment to Ensign Yachts. Ensign Yachts allegedly was unable to pay the bills until May, 2014, at which time it tendered a check to the plaintiff for $3460.37. The plaintiff rejected the check, however, because it contained language effectively waiving all claims by the plaintiff against the defendants and Ensign Yachts. Because accepting the tendered payment arguably would have precluded the plaintiff from continuing to seek reimbursement for its costs and attorney's fees incurred in the collection action, the plaintiff returned the check.

[4] The defendants raised as a claim in their preliminary statement of issues on appeal that the court improperly treated the amended complaint as the operative complaint because it was never properly served on the defendants. That issue, however, is not raised or addressed in the defendants' appellate brief, and, thus, we deem it abandoned. See *Sturman* v. *Socha*, 191 Conn. 1, 3 n.2, 463 A.2d 527 (1983) (issue raised in preliminary statement of issues but not pursued in brief deemed abandoned); *Brown* v. *Otake*, 164 Conn. App. 686, 698–99 n.8,     A.3d     (2016) (same).

[5] With respect to Ensign Yachts, the trial served as a hearing in damages.

[6] The plaintiff also asked the court to refer Lovejoy to the Statewide Grievance Committee, arguing that his failure to pay a court reporter for four years and then removing the small claims action to Superior Court solely to cause further delay was unprofessional conduct warranting a reprimand. The court, however, declined to make such a referral.

[7] The plaintiff filed a motion to dismiss the appeal as late. It argued that, although the court had rendered a judgment disposing of all counts of the complaint on July 3, 2014, the defendants waited nearly three months to file the present appeal. An appealable final judgment in this matter, however, did not arise until the trial court issued notice on September 11, 2014, of its ruling on the plaintiff's motion for prejudgment interest. See *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 214–15, 608 A.2d 682 (1992) (no appealable final judgment if court renders judgment assessing damages but has not ruled on claim for discretionary prejudgment interest). Because the defendants filed the present appeal within twenty days from the issuance of notice of the court's decision regarding prejudgment interest, it is timely. See Practice Book § 63-1 (a). Accordingly, this court denied the plaintiff's motion to dismiss. The plaintiff nevertheless raised the timeliness of the appeal again in its appellate brief and at oral argument. To the extent that the plaintiff's efforts to revisit this issue can be construed as a request for reconsideration, we decline to revisit our prior ruling.

[8] The primary argument raised by the defendants before the trial court did not focus upon whether a valid contract was formed, but whether any contract that did exist was entered into by the defendants acting solely as the disclosed agents of Ensign Yachts or with the understanding that Ensign Yachts, and not the defendants, ultimately was liable for payment. It is thus understandable why the trial court's oral decision is limited in analytical details regarding contract formation. None of the parties sought further clarification or articulation of the factual or legal basis for the court's ruling and, thus, we endeavor to review the claims raised on appeal, if possible, on the basis of the record presented. See *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 526–27 n.3, 72 A.3d 55 (2013).

[9] Although, as discussed later in this opinion, the defendants challenge that particular factual finding, they do not dispute that the plaintiff provided its services in response to a request for those services communicated in some fashion by Lovejoy.

[10] The defendants raised this issue to the court as the first of eight special defenses, stating: "The defendant(s) were disclosed agents of [Ensign Yachts], and, as such, are not liable to plaintiff." In its decision, the court found in favor of the plaintiff on the first special defense without comment.

[11] At trial, Lovejoy testified that he also had disclaimed responsibility for payment on order forms that he filled out and gave to the court reporters at the time of the depositions. He was unable to offer copies of the alleged order forms and did not call any of the court reporters as witnesses. The plaintiff's principal testified that she had no independent knowledge of the order forms or what may have been written on those forms or communicated to the individual reporters. The court certainly was not required to credit

Lovejoy's testimony, which was unsupported by any other evidence. The court did not discuss the order form issue in its decision, and, as previously indicated, none of the parties requested an articulation or clarification of the court's oral ruling.

[12] "A court's disregard of an entity's structure is commonly known as piercing the corporate veil." (Internal quotation marks omitted.) *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 148 n.10, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). "The concept of piercing the corporate veil is equitable in nature . . . ." (Internal quotation marks omitted.) *KLM Industries*, *Inc.* v. *Tylutki*, 75 Conn. App. 27, 33, 815 A.2d 688, cert. denied, 263 Conn. 916, 821 A.2d 770 (2003). "Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." (Internal quotation marks omitted.) *Angelo Tomasso*, *Inc.* v. *Armor Construction & Paving*, *Inc.*, 187 Conn. 544, 557, 447 A.2d 406 (1982).

[13] The defendants pleaded counterclaims sounding in slander, abuse of process, and violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2012). In their statement of the issues, the defendants framed the present claim broadly, asking whether the court properly denied the defendants' counterclaims. In briefing this claim, however, the defendants limited their arguments to the abuse of process counterclaim. In so doing, they effectively have abandoned and waived any claim of error with respect to the counterclaims alleging slander and an unfair debt collection violation. "It is well established that [w]e are not obligated to consider issues that are not adequately briefed. . . . [If] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444, 35 A.3d 188 (2012).