*Ross et al. v. John Hancock Life Insurance Co. et al.*, 1095-11-15 Cncv (Mello, J., Oct. 7, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT
Chittenden Unit

CIVIL DIVISION
Docket No. 1095-11-15 Cncv

---

PETER H. ROSS, ET AL.,
    Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE
COMPANY (USA), ET AL.,
    Defendants.

---

### RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]

This is an action to recover on a "Flexible Premium Adjustable Life Insurance" policy. Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock") contends that the policy was no longer in effect at the time of the insured's death because it had been terminated for failure to pay premiums. Plaintiffs contend that the termination of the policy was unlawful and that the policy was therefore still in effect at the time of the insured's death. Unless indicated otherwise, the following facts are undisputed.

On April 5, 2004, The Manufacturers Life Insurance Company (U.S.A.) issued life insurance policy number 59 336 875 (the "Policy") to the trustee of the Charlotte H. Ross Irrevocable Life Insurance Trust II. The policy insured the life of Charlotte H. Ross, the mother of plaintiffs Charles R. Ross, Jr., Peter Ross, and Jacqueline Ross. On January 1, 2005, John Hancock became the issuer of the Policy as the result of a merger. The face amount of the policy is $1 million.

---

[1] The cross-motions relate solely to plaintiffs' claim against defendant John Hancock.

On June 29, 2006, the policy was assigned to the plaintiffs, which had the effect of making the plaintiffs the owners of the Policy. A "Change of Ownership" form (Exhibit A to the Complaint) by which ownership of the Policy was transferred to the plaintiffs, was delivered to and accepted by the defendant. The form listed the "[n]ew assigned owners" and their addresses as follows:

> "Charles R. Ross
> 394 Tyler Bride Road
> Hinesburg, VT 05461
>
> "Peter Ross
> 2130 Shelburne Falls Road
> Hinesburg, VT 05461
>
> "Jacqueline Ross
> 1328 State Highway 205
> Oneonta, NY 13820"

Change of Ownership, p. 3.

John Hancock was required by Vermont's Department of Insurance to remind policy owners annually of their right to designate a third party addressee (Defendant's Exh. 4). On December 17, 2010, John Hancock mailed to "Charles R. Ross, 394 Tyler Bridge Road, Hinesburg VT 05461" a letter notifying him of his right to designate a third party designee in writing (Id.). None of the plaintiffs ever sent John Hancock a writing designating a third party addressee.[2]

The Policy contained a flexible premium provision under which a policy owner could choose when and how frequently to make premium payments. A policy owner could choose to make monthly, quarterly, semi-annual or annual payments of the amount needed to cover the

---

[2] John Hancock claims that it sent such letters to the plaintiffs annually, but Exhibit 4 is the only such letter provided to the court, and it is addressed only to plaintiff Charles R. Ross.

cost of the amount of insurance desired.  In other words, there was no fixed premium schedule for the Policy.

Premium payments were made on the Policy from time to time during the years 2005 through 2009.  The last premium payment in the amount of $45,232.64 was made on March 9, 2009.  There is no evidence in the record establishing who made these premium payments, except that they were not made by the plaintiffs.  The payments might have been made by the insured herself (i.e., Charlotte H. Ross) or by the agent who sold her the Policy (Damon K. Kinzie of Morgan Stanley Smith Barney, LLC, whose business address was 69 Swift Street, 4th Floor, South Burlington, VT 05403), who also served as a financial advisor.[3]

The Policy contained a "Policy Termination" provision which stated that the Policy would go into default "if, at the beginning of any Policy Month, the Net Cash Surrender Value would go to or below zero after we take the Monthly Deduction that is due for that month" (Defendant's Exhibit 1 at JH259).  It provided for a grace period of 61 days from the date that the Policy went into default for the policy owner to pay the overdue premium (Id.).  The Policy provided that it would terminate at "the end of the grace period for which you have not paid the amount necessary to bring the policy out of default (Id.)."  The Policy also stated:

> At least 30 days prior to the termination of coverage, we will send a notice to your last known address, specifying the amount you must pay to bring the policy out of default.  If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

Id.  Under the Policy, "'you' and 'your' refer to the owner of the policy" and "'[w]e,' 'us' and

---

[3] Plaintiffs allege in their Complaint that they and their mother relied on Damon K. Kinzie to pay the premiums on the Policy when necessary and to keep her and them properly advised of issues relating to the Policy; they also allege that Kinzie in fact made all the premium payments on the Policy through 2009, presumably from Charlotte H. Ross' funds, and that his employer, Morgan Stanley Smith Barney, is liable to the plaintiffs for allowing the Policy to lapse in 2011 (Complaint, pp. 2–3).  In its Answer to the Complaint, John Hancock denies these allegations for lack of sufficient information.  Morgan Stanley denies that they are true (see "Morgan Stanley's Response to John Hancock's Memorandum on Summary Judgment").

'our' refer to [the insurer]" (Id., at JH 245).

On February 22, 2011, John Hancock mailed out a "Termination Warning Notice" addressed to "Charles R. Ross, Peter Ross, Jacqueline Ross, 394 Tyler Bride Road, Hinesburg, VT 05461" (Defendant's Exh. 3). The notice said, "Your premium payments to date are insufficient to maintain your coverage beyond February 21, 2011," and it added "To keep your valuable insurance in force, you need to submit … [a] minimum payment of $9,790.20 by Apr 23 2011 to continue your coverage until May 21, 2011" (Id.). The "394 Tyler Bridge Road, Hinesburg, VT" address to which John Hancock mailed the notice was the address of plaintiff Charles R. Ross, Jr. John Hancock did not mail a copy of its "Termination Warning Notice" to plaintiff Peter Ross' address at 2130 Shelburne Falls Road in Hinesburg, Vermont or to plaintiff Jacqueline Ross' address at 1328 State Highway 205 in Oneonta, New York.

Plaintiff Charles R. Ross, Jr. did not inform Peter Ross or Jacqueline Ross about the "Termination Warning Notice," and neither Peter Ross nor Jacqueline Ross was aware that the Policy was at risk of terminating unless a premium payment was made by April 23, 2011.

No premium payment was made on the Policy by the deadline of April 23, 2011. On May 3, 2011, John Hancock issued a "Lapse Termination Notice" addressed to "Charles R. Ross, Peter Ross, Jacqueline Ross, 394 Tyler Bridge Road, Hinesburg, VT 05461" (Defendant's Exhibit 5). The notice said, "We regret to inform you that, effective Apr 23, 2011 your policy has terminated due to insufficient payments" (Id.). John Hancock did not mail a copy of its "Lapse Termination Notice" to plaintiff Peter Ross' address at 2130 Shelburne Falls Road in Hinesburg, Vermont or to plaintiff Jacqueline Ross' address at 1328 State Highway 205 in Oneonta, New York.[4]

---

[4] John Hancock alleges that "Plaintiffs' financial adviser, Damon K. Kinzie, also received the Termination Warning Notice and Lapse Termination Notice" (Defendant's Statement of Undisputed Facts, ¶ 12). However, this

4

Plaintiff Charles R. Ross, Jr. did not inform Peter Ross or Jacqueline Ross about the "Lapse Termination Notice," and neither Peter Ross nor Jacqueline Ross learned that the Policy had terminated until after their mother died.[5]

The Policy contained a provision under which a policy owner could have his or her lapsed policy reinstated by submitting a written reinstatement request to the insurer and paying "a premium equal to the amount that was required to bring the policy out of default immediately prior to termination" (Defendant's Exh. 1, at JH259-60). Under the Policy, a request for reinstatement had to be submitted within five years after the date the Policy terminated, and it had to be accompanied "with evidence of insurability satisfactory to us on the life insured" (Id.).

Plaintiffs' mother, the insured Charlotte H. Ross, died on December 13, 2013. She was 87 years old at the time of her death (Defendant's Exh. 1 at JH252). At the time of Charlotte H. Ross' death, plaintiffs Peter Ross and Jacqueline H. Ross believed that the Policy was still in effect.[6] By the time they learned that the Policy had been terminated for non-payment of premium, it was too late for Peter Ross or Jacqueline Ross to exercise their right to seek reinstatement of the Policy because, their mother having died, her life was no longer insurable.

---

allegation is disputed by the plaintiffs and by co-defendant Morgan Stanley Smith Barney, LLC. The notices themselves (i.e., Exhibit 3 nor Exhibit 5) do not on their face show that courtesy copies were sent to Kinzie or to Kinzie's business address in Burlington, Vermont.

[5] Plaintiff Charles R. Ross neither admits nor denies receiving the "Termination Warning Notice" or the "Lapse Termination Notice." For purposes of this ruling, the court presumes that he received them both.

[6] Peter Ross and Jacqueline Ross allege that, had they known in February of 2011 that the policy was at risk of being terminated for lack of a premium payment, they could and would have paid the premium themselves to keep the policy in force because their mother was at that time 85 years of age and in ill health. John Hancock disputes these allegations.

DISCUSSION

It is undisputed that by virtue of a merger John Hancock became the issuer of a Policy of life insurance insuring the life of Charlotte H. Ross. It is also undisputed that plaintiffs became the owners of the Policy in 2006 and that Charlotte H. Ross died in 2013. John Hancock contends that it is not liable to the plaintiffs on the Policy, notwithstanding the death of the insured, because the Policy had been terminated for failure to pay premiums in 2011, and, therefore, it was no longer in effect at the time of her death. Plaintiffs do not deny the failure to pay premiums. They contend, rather, that John Hancock's termination of the policy was unlawful and that the policy was therefore still in effect at the time of their mother's death.

As noted above, the Policy stated:

> At least 30 days prior to the termination of coverage, we will send a notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

As indicated earlier, the terms "you" and "your" refer to "the owner of the policy." Here, there were three owners of the Policy, plaintiffs Charles R. Ross, Jr., Peter Ross and Jacqueline Ross. Under the plain meaning of the first sentence of this provision, therefore, John Hancock was required to "send a notice" to each plaintiff's "last known address" specifying the amount plaintiffs had to pay to bring the policy out of default prior to terminating coverage. Moreover, John Hancock had on file notice that the policy had been assigned to the three plaintiffs, and John Hancock had on file each plaintiff's mailing address. Therefore, under the plain meaning of the second sentence of the foregoing Policy provision, John Hancock was required to "also mail a copy of the notice of the amount due" to each of the three plaintiffs in their capacities as the assignees of the Policy. John Hancock did mail its "Termination Warning Notice" and

6

"Lapse Termination Notice" to Charles R. Ross, Jr., but it did not mail either notice to Peter Ross' address or to Jacqueline Ross' address. Therefore, John Hancock failed to comply with termination provisions of the Policy when it terminated the Policy.

Moreover, at the time John Hancock terminated the Policy, Vermont had in effect a statute stating:

> No individual contract for life insurance covering an individual 64 years of age or older, which has been in force for at least one year, shall be cancelled for nonpayment of premium, unless, after expiration of the grace period and at least 21 days prior to the effective date of any such cancellation, the insurer has mailed a notification of such impending cancellation in coverage to the policyholder….

8 V.S.A. § 3742(c).[7] John Hancock alleges that a bulletin issued by the Vermont Division of Insurance informed life insurers that the notice requirement of this statute applied only to policyholders residing in Vermont. At the time John Hancock sought to terminate the Policy there were three policyholders, namely, the three plaintiffs, two of whom lived in Vermont and one of whom (Jacqueline Ross) did not. Under the plain meaning of this statute, therefore, John Hancock could not effectively cancel the Policy for nonpayment of premium without having "mailed a notification of such impending cancellation in coverage" to at least the two plaintiffs who resided in Vermont, namely Charles R. Ross, Jr. and Peter Ross. John Hancock did mail its notices to Charles R. Ross Jr., but it did not mail either notice to Peter Ross' address. Therefore, John Hancock failed to comply with the statute when it terminated the Policy.

John Hancock argues that the act of mailing its notices to Charles R. Ross, Jr. was sufficient under the Policy and the statute for a number of reasons. First, John Hancock argues that the Policy expired by its own terms when the plaintiffs failed to pay the required default

_____

[7] This statute was repealed in 2015 as part of a revision of Vermont's nonforfeiture laws for deferred annuities and life insurance policies.

premium. ("Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ("Cross-Motion"), 9-10). In support of this argument John Hancock relies upon the Policy provisions which state that the Policy goes into default when the net cash surrender value reaches or drops below zero, and that the Policy terminates at "the end of the grace period for which we have not received the amount necessary to bring the policy out of default." However, the Policy also required that John Hancock send a notice to the policyholder's last known address and to "the assignee on record" "[a]t least 30 days prior to termination of coverage … specifying the amount you must pay to bring to bring the policy out of default." Moreover, the applicable statute provides that "[n]o individual contract for life insurance … shall be cancelled for nonpayment of premium, unless … the insurer has mailed a notification of such impending cancellation in coverage to the policyholder." Reading these provisions together, it is clear that a default alone does not result in a termination of coverage; termination for nonpayment of premium occurs only after the policyholders and assignees have been given the required notice and opportunity to "bring the policy out of default."

Next, John Hancock argues that the notices it mailed to Charles R. Ross, Jr. were sufficient to terminate the policy because they were addressed to all three plaintiffs "at the address John Hancock had used for almost five years, without any objection from Plaintiffs" (Cross-Motion, p. 11). John Hancock further argues in this connection that plaintiffs must be estopped from denying the sufficiency of the notice because "[a]ll three Plaintiffs knew or should have known" that for nearly five years John Hancock had been sending all correspondence about the policy to Charles R. Ross, Jr.'s address, plaintiffs never asked John Hancock to send mail to additional addresses, and Charles R. Ross, Jr. had since 2006 "accepted a duty of care to act on behalf of all owners of the policy in receiving correspondence at his address regarding that

8

policy" (Id., pp. 16-17).  Therefore, John Hancock contends that plaintiffs "are estopped from arguing after the fact that notice to the address of record was insufficient" (Id.).

For several reasons John Hancock's estoppel argument must be rejected.  First, John Hancock has provided the court with no proof of its assertion that, from the time plaintiffs became the owners of the Policy in 2006 through 2010, it had been addressing all correspondence about the policy to the three plaintiffs at Charles R. Ross, Jr.'s address.  If such proof existed, it would be in John Hancock's possession, but John Hancock has not produced it.  The only piece of correspondence that John Hancock has produced, that predates the default and termination notices, was the letter that John Hancock sent to Charles R. Ross, Jr. on December 17, 2010, notifying him of his right to designate a third party designee in writing (Defendant's Exh. 4).  That letter was addressed only to Charles R. Ross, Jr.; the names of Peter Ross and Jacqueline Ross do not appear anywhere on it.

Secondly, John Hancock has provided the court with no evidence that would support a finding that prior to February of 2011 Peter Ross or Jacqueline Ross knew or had reason to know that John Hancock was sending notices to them via their brother Charles.  To the contrary, the "Change of Ownership" form by which the Policy was assigned to the plaintiffs listed separate addresses for each of the three "[n]ew assigned owners," and there is no evidence in the record indicating that Peter Ross or Jacqueline Ross ever agreed, orally or in writing, to have notices sent to them via their brother.  In the absence of evidence that they knew John Hancock had been sending notices to them via their brother or intended to do so in the future, no jury could find that they had acquiesced in that decision or given John Hancock reason to believe they had acquiesced.

9

Lastly, John Hancock has come forward with no evidence that would support a finding that Peter Ross or Jacqueline Ross intentionally did or said anything that would have given John Hancock reason to believe that it could mail their default and termination notices to their brother, and not to them. On this record there is no basis for estopping the plaintiffs from denying the sufficiency of termination notice. In re Landry, 2015 VT 6, ¶ 17, 198 Vt. 565 ("[T]he four criteria for the proper application of the equitable estoppel doctrine . . . we summarize as follows: '(a) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon [by the party asserting estoppel] . . . ; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped'" (citations omitted)).

Next, John Hancock contends that it had no obligation under Vermont's statute, 8 V.S.A. § 3741(c), to send notice to all three plaintiffs at their individual addresses because the statute required notice to be sent to "the policyholder," not "policyholders" (Cross-Motion, pp. 11–13). Therefore, John Hancock argues that notice to one policy holder was sufficient to satisfy the statute.[8] In addition, John Hancock points out that a bulletin from Vermont's Insurance Division informed insurers that the statute's notice requirement only applied to a policyholder in the State of Vermont; thus, under the statute John Hancock had no duty to send a notice to Jacqueline Ross, who resides in New York State (Id.).

The contention that section 3641(c) allowed John Hancock to send its termination notice to just one of the plaintiffs is without merit. When construing the meaning of a statute, "[w]ords

---

[8] John Hancock does not make the same argument with respect to the termination provision of the Policy, even though that provision also refers to "the owner of the policy" and "the assignee on record." Such a contention would be without merit, in any event. The Policy expressly contemplated the possibility of multiple owners (see the "Joint Owner" provision of the Policy, Exhibit 1 at JH258), and if the parties had intended that notice could be sent to just one of multiple owners it would have provided for notice to "an owner of the policy" and "an assignee on record," not "the owner" and "the assignee."

10

importing the singular number may extend and be applied to more than one person or thing . . . ." 1 V.S.A. § 175; see also E. R. Wiggins Builders Supplies, Inc. v. Smith, 121 Vt. 143, 146 (1959) ("In statutory construction words used in a singular number may include the plural and the plural the singular, except where a contrary intention plainly appears."). The legislature's clear intent in enacting 8 V.S.A. § 3671(c) was to protect policyholders from an unintended loss of life insurance coverage, and the mechanism the legislature chose for protecting that important interest was by requiring life insurers to mail policyholders written "notification of such impending cancellation." This clear legislative intent would be defeated if the statute were interpreted to allow termination notices to be sent to only one policyholder, in cases where the policy has multiple owners. John Hancock appears to have tacitly acknowledged this when it addressed its default and termination notices to all three plaintiffs, despite mailing them to just one of the plaintiffs' addresses. Therefore, John Hancock violated the statute when it mailed its notices to just one address. See Couch on Insurance 3d. (West 2016 Rev. Ed.) § 32:22 ("An insurer is required to prove that all of the requirements of the applicable statute setting forth the procedure for valid cancellation of insurance policy have been complied with since any defect in that process results in ineffective cancellation of policy.").

Having concluded that the statute required termination notices to be mailed to all policyholders, the court need not address John Hancock's contention that the statute did not apply to plaintiff Jacqueline Ross because she resided outside of Vermont. It is undisputed that plaintiff Peter Ross was a Vermont resident. Therefore, John Hancock's failure to mail its termination notice to him was in and of itself enough to invalidate its termination of the policy, even if the statute were interpreted not to have also required notice to be mailed to Jacqueline Ross.

11

John Hancock next argues that the notices it sent to Charles R. Ross, Jr.'s address were sufficient because "notice to one co-owner, is notice to each of them" (Cross-Motion, pp. 13-14). In support of this argument John Hancock contends that it acted reasonably in assuming that Charles R. Ross, Jr. would pass on its notices to his siblings, Paul Ross and Jacqueline Ross, because, as a co-owner of the Policy with his siblings, Charles R. Ross, Jr. had a fiduciary obligation to notify them that the Policy was in default and that payment was needed (Id).

These contentions are also without merit. The general rule is that "[n]otice to one of several persons holding an ownership interest under the policy is insufficient, at least where the multiple ownership is known to the insurer." Couch on Insurance 3d. (West 2016 Rev. Ed.) § 31:22. Here, John Hancock clearly knew that all three plaintiffs were owners of the Policy, and John Hancock had each plaintiff's mailing address on record. Moreover, for the reasons already noted above, the Policy itself required that the termination notice be sent to all three plaintiffs and the applicable statute required the notice be sent to at least two of the plaintiffs. If plaintiff Charles R. Ross, Jr. violated an fiduciary duty, it was a duty he owed to his siblings, not to John Hancock.

Next, John Hancock contends that it complied with its notice requirements because, in addition to sending its notices to Charles R. Ross, Jr., "John Hancock also sent a copy of the Warning Notice to Plaintiffs' agent, Mr. Kinzie, who, according to Plaintiffs, was responsible for making the [premium] payment" (Cross-Motion, p. 11). In support of this contention, John Hancock relies on the "general rule, 'the knowledge of an agent acting within the scope of his authority is chargeable to the principal, regardless of whether that knowledge is actually communicated'" (Id., p. 15). Plaintiffs and Morgan Stanley Smith Barney deny John Hancock's claim that notice was sent to Mr. Kinzie.

12

Plaintiffs are entitled to summary judgment in their favor, despite John Hancock's disputed claim that notice was sent to Mr. Kinzie. First, the court notes that John Hancock has provided the court with no proof of its assertion that copies of its default and termination notices were sent to Mr. Kinzie. If there were any evidence supporting the claim, it would be in John Hancock's possession, but no such evidence has been forthcoming. The affidavit of Brian Latcham, which John Hancock filed in opposition to plaintiff's motion for summary judgment and in support of its cross-motion, makes no mention of any notice having been sent to Mr. Kinzie. Moreover, the notices themselves (Defendant's Exhibits 3 and 5) do not on their face show that courtesy copies were sent to Mr. Kinzie or to his business address in Burlington, Vermont. Therefore, John Hancock's assertion is unsupported by any testimony or document in the record before the court.

Secondly, neither the Policy nor the applicable statute states that a termination notice may be sent to an owner's agent; to the contrary, they require notice to be sent to the owners of the Policy. Thirdly, John Hancock has come forward with no admissible evidence that the plaintiffs authorized Mr. Kinzie to receive termination notices on their behalf or that he ever agreed to bear that responsibility. Lastly, John Hancock's theory that Mr. Kinzie was plaintiffs' agent for purposes of receiving default and termination notices on their behalf is inconsistent with Vermont law. See Rocque v. Co-Operative Fire Ins. Assoc., 140 Vt. 321, 326–27 (1981) ("Absent special facts not present here, it is generally well settled that once a policy has been procured as requested, the relationship terminates and no further duty is owed the insured by the insurance agent in respect to such insurance.").

Finally, John Hancock argues that its notices to Charles R. Ross, Jr. substantially complied with the statutory notice requirement, and that substantial compliance with a statutory

notice requirement is sufficient to cancel a policy for nonpayment of premiums (Cross-Motion, pp. 15-16). John Hancock has not cited to any decision of the Vermont Supreme Court holding that substantial compliance, as opposed to strict compliance, with a statutory notice requirement is sufficient when an insurer seeks to terminate an insurance policy. Further, John Hancock's contention appears to be inconsistent with the general rule noted above that "[a]n insurer is required to prove that all of the requirements of the applicable statute setting forth the procedure for valid cancellation of insurance policy have been complied with since any defect in that process results in ineffective cancellation of policy." Couch on Insurance 3d. § 32:22. John Hancock has cited to Vermont Supreme Court decisions holding the opposite, namely that substantial compliance with a policy notice requirement by an *insured* who is seeking coverage, is sufficient. See Putney School, Inc. v. Schaaf, 157 Vt. 396, 404–05 (1991) ("The rule in Vermont is that substantial compliance with notice requirements will suffice.") (citing Stonewall Insurance Co. v. Moorby, 130 Vt. 562, 566–67 (1972) (insurance policy provisions are liberally construed in favor of the insured, and substantial rather than strict compliance will suffice)); see also Towns v. Northern Security Insurance Co., 2008 VT 98, ¶ 43, 184 Vt. 322 (reaffirming the rule that substantial compliance with contractual notice requirement by insureds is sufficient and adding that an insurer must prove that it was prejudiced by delayed notice before it may be relieved from contractual duties). These decisions, allowing substantial compliance by *insureds* with policy notice requirements, do not support a conclusion that substantial compliance by *insurers* with statutory notice requirements is sufficient.

John Hancock does cite to a federal court decision holding that, under New York law, a minor mistake does not necessarily void a termination notice for nonpayment of a life insurance premium. Stein v. American General Life Insurance Co., 34 F. Supp. 3d 224, 232 (E.D.N.Y.

14

2014).  <u>Stein</u> would not support John Hancock's contention, even if this court recognized a rule allowing substantial compliance by insurers with Vermont's statutory notice requirement.  In <u>Stein</u> the insurer's termination notice was sent and received by the policyholder; the only deficiency was that the notice misstated by one day the amount of time the policyholder had within which to cure the default.  <u>Id</u>. ("In this case, it is 'scarcely possible to imagine any injury resulting from' Defendant's alleged mistake in requiring payment 'prior to July 20, 2009' rather than by midnight on that date.").  The noncompliance in this case was much more serious than the noncompliance in <u>Stein</u>.

The court does not need to determine whether Vermont law allows substantial compliance, or requires strict compliance, with 8 V.S.A. § 3742(c) by insurers seeking to terminate life insurance policies for nonpayment of premium.  Even if substantial performance were enough under Vermont law, John Hancock's termination notice in this case failed to substantially comply with the statutory notice requirement as a matter of law.  To send notice to one owner, when notice to two or possibly three owners was required, is hardly a "minor mistake."  It deprived at least one owner, Peter Ross, of any opportunity to save the policy from termination by taking steps to pay the required premium.

ORDER

For all the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED and Defendant's cross-motion for summary judgement is DENIED.

SO ORDERED this 7th day of October, 2016.

_____
Robert A. Mello
Superior Court Judge

15